IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| 5 GUYS MANAGEMENT, INC., an Illinois corporation, | |
| Plaintiff, | |
| v. | Case No. Hon. |
| GREAT LAKES HOLISTICS MUSKEGON, INC., a Michigan corporation; REDBUD ROOTS LAB VIII, INC., a Michigan corporation; REDBUD ROOTS, INC., a Michigan corporation; GREAT LAKES HOLISTICS, LLC, a Michigan limited liability company; CHRISTOPHER FANTA, an individual; ALEX LEONOWICZ, an individual; and JACOB OWNBEY, an individual, | |
| Defendants. | |

## COMPLAINT AND JURY DEMAND

Plaintiff, 5 Guys Management, Inc. ("5 Guys"), sets forth its Complaint against Defendants Great Lakes Holistics Muskegon, Inc. ("GLH Muskegon"), Redbud Roots Lab VIII, Inc. ("Redbud"), Redbud Roots, Inc. ("Roots"), Great Lakes Holistics, LLC ("GLH"), Christopher Fanta ("Fanta"), Alex Leonowicz ("Leonowicz"), and Jacob Ownbey ("Ownbey") (collectively referred to as "Defendants"), as follows:

## PARTIES

1.      5 Guys is an Illinois corporation with its principal place of business in Cook County, Illinois.

2.      Great Lakes Holistics Muskegon, Inc. is a Michigan corporation with its principal place of business in Battle Creek, Michigan.  GLH Muskegon did business in this District in Muskegon, Michigan.

3.      According to the Private Placement Memorandum received by 5 Guys (**EX 1**), Fanta and Ownbey were the members of the Board of Directors and the Managers of GLH Muskegon.

4.      According to the Private Placement Memorandum (**EX 1**), Fanta and Leonowicz were the Executive Team and key personnel of GLH Muskegon.

5.      Redbud Roots Lab VIII, Inc. is a Michigan corporation with its principal place of business in Buchanan, Michigan.  Redbud did business in this District in Muskegon, Michigan.

6.      Redbud Roots, Inc. is a Michigan corporation with its principal place of business in Buchanan, Michigan.

7.      Great Lakes Holistics, LLC is a Michigan limited liability company with its principal place of business in Battle Creek, Michigan.

8.      Fanta is a Director of both Redbud and Roots.

9.      Leonowicz is the Secretary and a Director of both Redbud and Roots.

10.      Fanta is a resident of Chicago, Illinois.

11.      Upon information and belief, Leonowicz is a resident of Commerce Township, Michigan.

12.      Leonowicz is an attorney practicing law in Royal Oak, Michigan.

13.      Ownbey is a resident of Battle Creek, Michigan. Ownbey is the President, Secretary, Treasurer and sole director of GLH Muskegon.  Upon information and belief, Ownbey is the manager of GLH.

## JURISDICTION AND VENUE

14.     This is a civil action arising under Section 10(b) of the Securities Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

15.     This Court has subject matter jurisdiction over the claim arising under the laws of the United States pursuant to 28 U.S.C. § 1331 and Section 27 of the Securities Exchange Act (15 U.S.C. § 78aa).

16.     This Court has subject matter jurisdiction over the pendent claims stated in this Complaint arising under Michigan state law pursuant to 28 U.S.C. § 1367, as such claims are so related to the federal claim asserted herein as to form part of the same case or controversy under Article III of the United States Constitution.

17.     Venue is proper in this District under Section 27 of the Securities Exchange Act (15 U.S.C. § 78aa(c)), and 28 U.S.C. § 1391(b).  A substantial part of the events or omissions giving rise to the fraud or the effects of the fraud occurred in this District.

18.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly or indirectly used the means and instrumentalities of interstate commerce, including the United States mail and interstate telephone and wire communications.

## GENERAL ALLEGATIONS

### Overview

19.     On or about July 13, 2022, 5 Guys made a $1.5 million investment in a company by the name of Great Lakes Holistics Muskegon, Inc. ("GLH Muskegon"), which was supposed to open and operate a marijuana dispensary at 237 W. Laketon Avenue in Muskegon, Michigan.

20.    Defendants solicited 5 Guys to make the $1.5 million investment in exchange for shares of Class B stock in GLH Muskegon, comprising 22.5% of the issued and outstanding capital stock of GLH Muskegon.

21.    Defendants purported to be experienced in the business of selling marijuana both through wholesale and retail distribution.

22.    Defendants allegedly secured millions of dollars of funds from investors other than Plaintiff.

23.    Defendants fraudulently concealed from 5 Guys the material fact that Fanta and Leonowicz had previously operated a marijuana dispensary at 237 W. Laketon Avenue and that the business had failed and shuttered its doors one year before.

24.    Defendants solicited the $1.5 million investment from 5 Guys by representing that the investors' funds would be used to capitalize the business. Fanta and Leonowicz instead pocketed the $1.5 million invested by 5 Guys and never used the funds to operate the marijuana dispensary.

25.    Defendants have made partial return-of-capital payments to 5 Guys, but failed to return 5 Guys' entire investment.

26.    Defendants made a $225,000.00 payment to 5 Guys, via wire, on or about June 13, 2024.

27.    Defendants made a second payment of $25,000.00 to 5 Guys on July 16, 2024.

28.    No additional payments have been received by 5 Guys. Plaintiffs are still owed at least $1,250,000.00 of the principal amount of their investment.

4

**The Initial Investment and the Disclosure of the
Alleged Failure of the Business Eight Months Later**

29.    In order to induce 5 Guys to invest in GLH Muskegon, Defendants prepared and provided to 5 Guys a Private Placement Memorandum ("PPM") (**EX 1**).

30.    The PPM was unsigned and undated.

31.    The PPM stated that it was "made under the terms of Rule 506 of [Securities and Exchange Commission ("SEC")] Regulation D.

32.    Even though they claimed to rely on Regulation D to exempt the securities offering from the full registration requirements, Defendants failed to file the required Form D with either the SEC or the State of Michigan.

33.    5 Guys agreed to purchase Class B stock, comprising 22.5% of the issued and outstanding capital stock of GLH Muskegon, for the price of $1.5 Million.

34.    5 Guys sent wire transfers to Defendants in the total amount of $1.5 Million on or about July 13, 2022.

35.    During the six months following the investment, 5 Guys received monthly profit and loss statements and profit distributions that totaled $147,465.53.

36.    Claiming for months that a national marijuana business named PharmaCann was considering paying millions of dollars to buy the Muskegon dispensary and two other dispensaries located in Kalamazoo and Battle Creek, Fanta had convinced Dr. Manish Pandya, the President of 5 Guys, that he and the other four investors in 5 Guys would be making a killing soon.

37.    In a text message sent to Dr. Pandya on or about September 14, 2022, Fanta represented that PharmaCann had offered $45 million for the three dispensaries, and Fanta indicated he was hoping to secure ten million dollars more from PharmaCann, writing: "I think I can get to 55mm."

38.     Then, the PharmaCann deal mysteriously went away, and it was replaced by the potential of another deal where Defendant Ownbey and his business associates would supposedly be paying several million dollars to buy the Muskegon dispensary. Ownbey had been brought in to manage the Muskegon dispensary when it restarted operations in 2023.

39.     In a text message sent by Fanta to 5 Guys on February 10, 2023, Ownbey was reported to be offering $3 million and Fanta claimed he was countering for $5 million.

40.     Suddenly, about two weeks later, Fanta notified the President of 5 Guys that the negotiations with Ownbey had not achieved the multimillion payoff intended, and that 5 Guys would receive only $500,000 for its $1.5 million investment.

41.     Fanta told Dr. Pandya that the business venture had not worked out and the dispensary had closed. He made some vague comments about how Ownbey had not managed the business properly, and he made reference to a problem with unpaid taxes.

42.     Providing some crude promotional materials in early March 2023 (**EX 2**), Fanta also offered an unspecified interest in a future Chicago dispensary to further ease the blow of losing a million dollars.

43.     Over the next several months, 5 Guys attempted to secure information regarding exactly what had occurred with the GLH Muskegon business, but the requested information was not provided.  No accounting has been provided regarding what happened to the assets or liabilities of GLH Muskegon.

44.     In April and May of 2023, facts came to light showing that 5 Guys had been defrauded. These facts surfaced because of a litigation between Fanta, Leonowicz, and Ownbey. Fanta and Leonowicz transmitted some of the initial court filings to 5 Guys. These materials revealed their misconduct.

### Four Key Elements Of The Fraud On 5 Guys

45.    There were four key fraudulent misrepresentations or acts of fraudulent concealment:  (1) an incomplete and misleading private placement memorandum; (2) diversion of the shareholders' invested funds into the promoters' own pockets after the shareholders had been explicitly told in the offering materials that the funds would be used to pay for the dispensary's business operations; (3) fraudulent concealment of the fact that the dispensary had previously been operated by Fanta and Leonowicz and had failed as a business one year before; and (4) six months of misleading (and potentially fabricated) accounting records with profit and loss statements designed to lull the investors into a false belief that the business was operating successfully during the July-December 2022 period. These fraudulent misrepresentations and acts of fraudulent concealment were committed willfully, wantonly and intentionally by Defendants who knew or should have known of the false, misleading and fraudulent nature of their conduct.

### An Incomplete and Misleading Private Placement Memorandum (PPM)

46.    With respect to the first key element of the fraud, an incomplete and misleading private placement memorandum, the PPM is very generic, and provides almost no specific financial information about the marijuana dispensary business to be operated by GLH Muskegon.

47.    It is important for a PPM to disclose related-party transactions, because such conflicts of interest can be used as a way to siphon money out of true businesses.

48.    The PPM provided to 5 Guys did not disclose any related-party transactions, although they existed.

49.    The PPM does not provide the address of the business, even though the business was operating at 237 W. Laketon Avenue at the time that 5 Guys invested in GLH Muskegon.

50.     The PPM does not disclose the rent obligations of GLH Muskegon, and does not disclose that the building used for the business was owned by a related party.

51.     The PPM does not contain a balance sheet, and does not provide any information about the ownership of the Class A, B, C, or D stock of GLH Muskegon, or how much capital had already been invested in the company prior to 5 Guys' investment.

52.     The PPM fails to disclose that the supplier of the marijuana to be sold was a related party, Redbud Roots, Inc.

53.     The PPM provided that 220,000 shares of Class B stock were available for a price of $6.66 per share, for a total of $1,465,200.00.  However, 5 Guys was charged and paid $1.5 Million for those shares.

54.     The PPM states that "financial forecasts are projections," but the PPM does not contain any projections at all.

55.     The PPM also does not contain any budget, *pro forma* profit and loss statement, or any information about the business' fixed and variable expenses.

56.     The PPM, on Page 9, says that "each facility will operate under its own P&L," but it does not provide any information about any facilities in Muskegon or elsewhere.

57.     The PPM identifies Ownbey as a Manager, but does not disclose that a Consulting Agreement had been signed between GLH Muskegon and Ownbey's company.

**Fanta And Leonowicz Pocketed The Investors' Funds After
Fraudulently Representing That Those Funds Would Be Used
<u>To Pay For The Operations Of The Muskegon Dispensary</u>**

58.     As to the second main element of fraud, Fanta and Leonowicz orally represented that they would use the $1.5 million investment from 5 Guys to operate the Muskegon marijuana dispensary. The PPM used to solicit the investment also explicitly told the 5 Guys investors, at

Page 10, that their $1.5 million investment in Class B shares would be used to capitalize the marijuana business:

> The Company is seeking total commitments of up to $1,500,000 to subscribe for 220,000 total Class B Stocks.
>
> The capital from the purchase of Stocks will be used for operating expenses, ongoing business expenses, general working capital, payroll and benefit expenses, taxes, security expenses, other expenses to build and develop the various cannabis facilities offered herein.

However, Fanta and Leonowicz did not use 5 Guys's $1.5 million for operating expenses, business expenses, or other expenses associated with operating the dispensary. Instead, Fanta and Leonowicz arranged to have Ownbey (who was apparently unaware of the 5 Guys investment) pay all of the expenses. The promoters kept 5 Guys's money for themselves.

59.     In an Affidavit executed and filed on April 24, 2023 in the case of *Redbud Roots Lab VIII, Inc., et al. v. Management 12 LLC, et al.*, Case No. 23-001871-CKB, Muskegon County Circuit Court (hereafter cited as the "Muskegon County Litigation"), Ownbey maintained that he and his associates "invested approximately $1 million in GLH Muskegon" and that Fanta and Leonowicz's Redbud entities "invested $0." (Ownbey Aff. ¶¶ 47, 49; **EX 3**.)

60.     In a brief filed on April 24, 2023 in the Muskegon County Litigation by his lawyer, Ownbey described an alleged telephone conversation between Fanta and Ownbey taking place after the suit was filed to demonstrate Redbud spent nothing on the Muskegon dispensary while Ownbey and his associates paid all the business expenses. The relevant part of the brief and the quoted telephone exchange are as follows:

> Upon receiving this lawsuit, Defendant Ownbey and Redbud owner, Christopher Fanta, spoke on the phone. Defendant Ownbey recorded the conversation where Mr. Fanta admits and/or concedes that Defendant Ownbey invested all the money into the Redbud/GLH stores:

**Ownbey**: But, what was the thought pattern behind that? Is just to lock and steal all of our stuff? Because you-- because you, you're sticking up for me saying, Hey, I know he put every dollar that went into that place is his, we should at least give him every dollar back and if we're going to send him on his way and sell the place, give 'em all his money back, give him all his stuff back and let him go, right?

**Fanta**: Well, I'm not disagreeing, you did put -- you did put -- you did pay for all that, I know.

61.    Further evidence that Ownbey paid all of GLH Muskegon's expenses appears in a January 2023 e-mail exchange between Leonowicz and Ownbey's lawyer (**EX 4**) that was attached as an exhibit to Ownbey's April 24, 2023 Affidavit. This e-mail exchange also indicates that Ownbey was kept in the dark regarding 5 Guys's $1.5 million investment and its 22.5% ownership interest in the Muskegon dispensary. Jack Burnett, the attorney for Ownbey, wrote as follows in his January 25, 2023 e-mail to Leonowicz:

Muskegon. If you agree, I think we can take the same approach for Muskegon. One way to clean it up and follow the Benton Harbor documents would be to have Chris and Jacob void the initial resolutions or redeem the Chris Fanta shares of Muskegon (*as I believe there has been no filings, business or assets moved into the Inc., so it would not require any type of book / asset issue – but correct me if I am wrong*). If this is not ok, please let me know, as it seems then we need to tweak the idea regarding the contributions, etc. … which does not seem optimal given our time crunch here. I did not want to start drafting those unless we are in agreement on how to proceed. [Italics added.]

62.    On January 25, 2023, Leonowicz responded to Burnett by writing:

We can take a similar approach. I have an assignment and assumption agreement prepared whereby 50% of the membership interest in 1817 Commerce St, LLC (holding title to 237 W. Laketon) are assigned to Jacob. The Bylaws and Resolutions would work to memorialize the business relationship which is owned 50% by Jacob and 50% by Redbud Roots, Inc.. I'll need to get with Jacob on the amounts due and owing for this location. From June –

10

December of 2022, Muskegon had a net profit of $631,260.65 and only $15,992.73 has been paid.

Leonowicz did not correct Burnett's belief that "no assets" had been conveyed to the Muskegon corporation. He failed to disclose the $1.5 million investment by 5 Guys. He omitted disclosure of 5 Guys's 22.5% ownership interest. He instead claimed that "50%" of GLH Muskegon was owned by "Redbud Roots, Inc."

63.     The fact that Fanta and Leonowicz pocketed the investors' funds, while failing to disclose to Ownbey or anyone else the fact that shares in the Muskegon business had been sold to investors for $1.5 million, is also shown by the way in which tax liabilities were handled by the promoters. The PPM given to the 5 Guys investors expressly provided at Pages 8 and 10 that 5 Guys's "capital from the purchase of Stocks will be used for … taxes" along with other operating expenses (**EX 1**, pp. 8, 10). According to Ownbey's account of the facts given in his April 24, 2023 Affidavit, Fanta and Leonowicz and their corporate entity never paid taxes for GLH Muskegon despite their duty to do so.  (Ownbey Aff. ¶ 51; **EX 3**.)

**Fanta And Leonowicz Fraudulently Concealed The Fact That
The Muskegon Marijuana Business Had Failed One Year Before**

64.     The third key element of fraud was the fraudulent concealment of the fact that the dispensary had previously been operated by Fanta and Leonowicz and had failed as a business one year before.

65.     GLH Muskegon was supposed to operate a marijuana dispensary at 237 W. Laketon Avenue in Muskegon, Michigan. In oral representations by Fanta and Leonowicz, and in the private placement memorandum ("PPM") used to solicit the investment, the 5 Guys investors were told this was a "new business" with "minimal operating history."

66.    5 Guys was also sent profit/loss statements for the 2 months preceding the July investment, and these clearly indicated that the business was being first started in May 2022 with initial expenses of just over $1,100 in that month.

67.    Contrary to these representations, the Muskegon dispensary was in fact a failed business that had shuttered its operations one year before. It is difficult to conceive of a fact more material to an investment than the fact that the business being invested in was a failed business.

68.    Again, these facts were disclosed in the Muskegon County Litigation where Fanta and Leonowicz through their corporate entities pursued legal claims against Ownbey. Ownbey stated in his April 24, 2023 Affidavit that "[t]hese locations were failed, shuttered businesses just one year prior…."  (**EX 3** at ¶ 44, *and see id.* at ¶ 28, describing Ownbey's effort to "revive RBR's failed and shuttered operations located at 237 W. Laketon, Muskegon, Michigan").

69.    In a brief filed on April 24, 2023 in the Muskegon County Litigation, Ownbey's lawyers from Butzel Long also described Ownbey's role as "reviv[ing]" the "failed and shuttered operations located at 237 W. Laketon, Muskegon, Michigan."

70.    While warning about the risks associated with a commercial enterprise that has no track record, the PPM on pages 8 and 13 falsely described GLH Muskegon as a "new business" (**EX 1** at pp. 8 (¶ 11) & 13 (carryover paragraph)).

71.    This was a false representation.  The business had been previously operated and had failed. The risks of investing in such a business were vastly greater than those of investing in a new enterprise with no track record.

72.    The PPM also stated on page 13 that the Muskegon business had a "minimal operating history" while cautioning that financial projections "based on ventures with minimal

12

operating history" were "inherently subject to a high degree of uncertainty." (**EX 1** at p. 13 (third full paragraph)).

73.     This was also a false statement; the business had been operated for a period of time a year before and had shuttered its operations. The Muskegon dispensary did not have a "minimal" history but rather a financially disastrous one which led to its doors being closed.

74.     Another cautionary point made in the PPM was that future forecasts of profitability could not be relied upon because "each [cannabis] market is unique to itself" and basing projected outcomes on "cannabis programs around the country" was thus "inherently unreliable" (**EX 1** at p. 12 (seventh paragraph)).

75.     These statements omitted mention of the material fact that a marijuana dispensary *at the same precise location in Muskegon* had previously been operated by Fanta and Leonowicz and had failed as a business. The unique market at that particular location had a history. There was therefore no reason to make projections using marijuana businesses from other parts of the country. Doing so only served to conceal the reality that a Muskegon dispensary at that same location had previously failed.

76.     Had 5 Guys known the truth about the dispensary's prior operating history, the investors would have been in the position to make a judgment as to the potential for success or failure of this Muskegon business.

77.     Dr. Pandya and his fellow 5 Guys investors never would have considered making this investment had they known the Muskegon facility at 237 W. Laketon Avenue had previously failed as a marijuana dispensary. Through their fraudulent concealment, and their express misrepresentations and grossly misleading half-truths, Fanta and Leonowicz swindled the 5 Guys investors by getting them to invest $1.5 million in a business that had previously failed.

**Fanta And Leonowicz Used Six Months Of Profit And Loss
Statements To Fraudulently Conceal Their Conduct And Convince
The Investors That The Business Was Profitable And Operating Well**

78.     The fourth key element of fraud entailed the use by Fanta and Leonowicz of six months of profit and loss statements, for the months July through December 2022, to fraudulently conceal the nature of their conduct and lull the investors into a false sense of confidence about their investment.

79.     The events that took place in February through mid-April 2023 are breathtakingly strange. These events, along with disclosures made in the Muskegon County Litigation, revealed how the profit and loss statements were used as part of the fraud.

80.     On February 10, 2023, 5 Guys was told that the operator and part owner of the Muskegon dispensary was offering $3 million to buy out the fifty percent interest of Fanta/Leonowicz and 5 Guys in that dispensary, and was being asked by Fanta to pay $5 million.

81.     Only two weeks later, 5 Guys was told that the dispensary had suddenly closed and ceased to do business. How could a business whose total value was being assessed by its joint owners at between $6 million and $10 million on the 10th of the month suddenly go out of business by the 25th day of the same month?

82.     A month and a half later, Fanta and Leonowicz, through one of their Redbud entities, were claiming in court in the Muskegon County Litigation that Ownbey had never owned any interest in the Muskegon dispensary, but was merely a contractor hired for $12,500 per week to run the facility, and that Ownbey had kept them in the dark about the operations of the business they owned by concealing all of the accounting and bank records of the dispensary.

83.     The court filings in the Muskegon County Litigation create a strong basis for believing that the six months of profit and loss statements provided by Fanta and Leonowicz to 5 Guys were completely fabricated by Fanta and Leonowicz.

84.     At a minimum, supplying the P & L statements to 5 Guys was, in and of itself, an act of fraudulent concealment because, as is described below, the P & L statements presented 5 Guys with an incomplete and inaccurate picture of what was really happening with their investment and withheld material information about the circumstances surrounding the creation of the P & L statements which seriously called into question their accuracy.

85.     The P & L statements were detailed and purported to show to-the-penny details of salaries and wages, tax payments, office supplies, and all other expenses and sources of income. Fanta and Leonowicz claimed in verified April 13, 2023 court filings that under the arrangement with Ownbey they were supposed to be the party who would "perform bookkeeping and tax accounting, utilizing its current accounting systems, cash management, banking of receipts, payment of bills and expenses, preparation and implementation of budgets." Yet, they told the court Ownbey and his co-defendants "did not allow" the promoters "to maintain control of bookkeeping and tax accounting, utilizing its current accounting systems, cash management, banking of receipts, payment of bills and expenses, preparation and implementation of budgets, without limitation."

86.     In the motion filed by their attorneys, Fanta and Leonowicz took the position that Ownbey had refused to supply "any accounting" or "any financial documents":

> The Defendants have not produced any accounting, or any financial documents for the RBR whatsoever, and Plaintiffs have continued to request an accounting. Again, Defendants needlessly prolonged, complicated, and evaded the process of simply granting access to records with respect to which Plaintiffs have at all times been fully and indisputably entitled.

> More recently, the Defendants have taken dangerous actions to impair the Companies' buying power, and have otherwise attempted to limit Plaintiffs' control, while still ignoring Plaintiffs' requests for financials.

If Fanta and Leonowicz were, in fact, foreclosed from having control over the accounting, how were they able to generate and supply to 5 Guys detailed accounting records for the July – December 2022 period?

87.     The provision of the P & L statements to investors implies that they are bona fide reports on the financial status of the business derived from reasonable and transparent financial accounting methods.  Furthermore, according to Fanta and Leonowicz's April 13, 2023 motion for a TRO filed in the Muskegon County Litigation, "there are stringent accounting requirements for cannabis companies," a fact that makes taking seriously the need for legitimate financial reporting even more important.

88.     If throughout the six-month period of time from July to December 2022 Fanta and Leonowicz were allegedly barred by Ownbey from having access to any of the bookkeeping and accounting systems, *systems that these two promoters were supposed to be in control of and operating*, then that disturbing reality, which cast grave doubt on the veracity of the P & L statements, should have been conveyed to the investors.

89.     Providing to the 5 Guys investors monthly P & L statements, while withholding the material fact that the promoters Fanta and Leonowicz were unable to examine "any" underlying accounting or financial documents, constituted an act of fraudulent concealment.

90.     The act of supplying detailed P & L statements with to-the-penny accounts of salaries and wages, tax payments, office supplies, and all other expenses and sources of income, clearly implied to the 5 Guys investors that Fanta and Leonowicz had a reasonable basis for the P

& L statements that was grounded in access to the underlying accounting and financial information concerning the business.

91.    The failure to inform the investors that all underlying accounting and financial information for these statements had been withheld made the act by Fanta and Leonowicz of providing detailed profit and loss statements for July through December 2022 highly misleading and lulled the investors into a false sense of confidence that the business was being managed properly and generating profits.

92.    Demonstrating that Fanta and Leonowicz made no honest effort to monitor the financial performance of the Muskegon business, and made no conscientious effort to ensure that reports they were giving investors about it were true, is the fact that the approximately $631,000 in alleged net income for the 2022 annual period, was never actually distributed to Fanta and Leonowicz. In an e-mail sent by Leonowicz to Ownbey's attorney Jack Burnett on January 25, 2023, Leonowicz stated: "From June – December of 2022, Muskegon had a net profit of $631,260.65 and only $15,992.73 has been paid."

93.    Each P & L statement that was given to 5 Guys was accompanied by a monthly distribution payment to 5 Guys. This distribution of profits was apparently not based on a distribution actually made to GLH Muskegon shareholders, but this material fact was concealed from the 5 Guys investors.

94.    By issuing monthly distributions to 5 Guys, the promoters were signaling that all was well with the investment. In fact, of the over $631,000 in profits that were supposed to have been shared through distributions to shareholders, less than 3% of the profits had in fact been distributed.

### Fanta And Leonowicz Carried On What Appears Now
### To Have Been An Elaborate Charade Concerning A Purported
### Investigation By An Accounting Firm And A Forensic Consultant

95.    Fanta and Leonowicz were engaged in a fraudulent concealment effort from April to July 2023 when they were insisting that they were performing a detailed "forensic" investigation of what had occurred at the Muskegon dispensary. In their April 2023 court filings in the Muskegon County Litigation, Fanta and Leonowicz claimed that the "full extent of Defendants' fraud is under active investigation by RBR." They also stated that they had "undertaken an initial forensic audit of its financial records" and that this had revealed that they had sustained damages "in an approximate amount that exceeds $1,000,000 based on the current financial audit results."

96.    Fanta and Leonowicz conveyed this notion of an active auditing of the financial affairs of the Muskegon dispensary to 5 Guys and its attorney, and for several months 5 Guys repeatedly requested the results of that audit. According to Fanta and Leonowicz, both an accounting firm named MGO (Marcias Gini & O'Connell LLP) and a forensic accountant from the consulting firm Cendrowski Corporate Advisors were engaged in the alleged process of auditing the financial history of the Muskegon business.  Reports from the audit have never been provided.

97.    In an April 18, 2023 e-mail from Leonowicz to 5 Guys' attorney, he wrote in part as follows:

> We are working with our accounting teams to determine the full extent of damages. We expect this will take some time as Defendants are concealing some of their records – even despite a court order to produce them.
>
> I'll work to keep you all regularly posted as matters develop. Here if you have any questions in the interim.

98.     Again in a May 2023 e-mail exchange, it was reported that work regarding the financial affairs of the company was supposedly being done. An e-mail sent on May 9, 2023 by 5 Guys' attorney to Leonowicz stated, in part:

> Accounting records - I understand that you are working with the accountants (MGO) to develop the facts regarding what happened with the Great Lakes Holistics Muskegon operation, as well as the other dispensaries that Ownbey operated, and we would appreciate seeing any accounting records that exist showing the way in which the Muskegon business was operated and how investment funds were allocated or used and how profits were handled since the time the $1.5 million investment was made by 5 Guys Management.

Leonowicz responded with a May 9, 2023 e-mail that stated, in part:

> The accountants and forensic experts are working to prepare these financials. Once complete, I will send them over.

99.     Additional requests for the accounting materials were made in the ensuing weeks.

100.     Finally, after a telephone conversation that took place on July 14, 2023 among two of the members of 5 Guys (Manish Pandya and Harsh Patel), 5 Guys' attorney, and Fanta and Leonowicz, a set of materials was received on July 15, 2023 that made a mockery of the idea that Fanta and Leonowicz had been busily engaged with their "accountants" at MGO and their "forensic consultant" at Cendrowski.  Those materials are attached as **EX 5.**

101.     Nothing on MGO's or Cendrowski's letterhead was supplied to 5 Guys. Instead, the total of what was sent consisted of (1) a fragment of an affidavit by James P. Martin who is identified as an employee of Cendrowski, (2) a one-page list of four "accounting issues," (3) a two-page list of "requests related to the GLH project," (4) an Excel spreadsheet with some December 2022 accounting entries, and (5) a one-page document bearing a date of May 8, 2023 with some cryptic notes. The authorship of all the documents is a mystery. No meaningful information was supplied regarding the financial affairs of GLH Muskegon.

**Fanta And Leonowicz Used The Façade Of Numerous Corporate
Entities Which Were Merely Their Alter Egos To Defraud And Double Deal**

102.    One key feature in the behavior pattern of Fanta and Leonowicz is the consistent disregarding of the formal legal separateness of corporate entities, such that adhering to the fiction of a separate existence between Fanta and Leonowicz, on the one hand, and their many corporations, on the other, would only serve to promote injustice and sanction fraud.

103.    GLH Muskegon, and also the various Redbud entities, all appear to have been nothing more than sham entities and nothing other than the alter egos of the two promoters Fanta and Leonowicz who consistently disregarded their corporations as entities with separate legal status.  Facts demonstrating that the corporate entities controlled by Fanta and Leonowicz are sham entities and that they exist in corporate form solely as a device to escape legal obligations include the following:

(a)    **Inadequate Capitalization.** GLH Muskegon was inadequately capitalized because the $1.5 million in investor funds that were supposed to capitalize the corporation were diverted to the pockets of the promoters. Fanta and Leonowicz did not honor the promise, stated on pages 8 and 10 of the PPM (**EX 1**), that the investors' $1.5 million would be "used for operating expenses, ongoing business expenses, general working capital, payroll and benefit expenses, taxes, security expenses and other expenses" of GLH Muskegon.

(b)    **Absence of Corporate Records.** On August 7, 2023, H. Joel Newman, retained as counsel for 5 Guys to attempt to reach a settlement, sent a letter to Fanta and Leonowicz demanding pursuant to MCL 450.1487(1) & (2) the following:

> [C]opies of (a) GLH's balance sheet as at the end of the preceding fiscal year; (b) its statement of income for the fiscal year; and (c) any statement of the sources and application of funds for the fiscal year….

> [A]n inspection of GLH's books and records for the purpose of enabling 5 Guys to assess the condition of the business, ascertain the disposition of the $1.5 million that 5 Guys invested in the business, and evaluate the representations made to 5 Guys regarding the condition of the business and 5 Guys's investment in the business, both before and after 5 Guys made the investment.

Mr. Newman reiterated his demand for the corporate records of GLH Muskegon in a February 5, 2024 letter to Attorney Seth Tompkins. Mr. Tompkins responded to this demand in an e-mail sent to Mr. Newman and Carey L. Robinson on February 6, 2024, in which he admitted there were no corporate records, stating:

> you both know that I've told you that the entity your clients invested in has no records because it never did business. [Underscoring original.]

(c)    **Consistent Failure to Observe Corporate Formalities.** The court filings in the Muskegon County Litigation show that Fanta and Leonowicz simply chose whatever corporate form suited their immediate purpose. For instance,  Fanta and Leonowicz used a Redbud entity called Redbud Roots Lab VIII, Inc. to act as though it was the corporate entity with an ownership interest in and the proper licensing status to operate the Muskegon dispensary. Leonowicz, in his verification of a pleading filed in the litigation, claims to be the "owner" of Redbud Roots Lab VIII, Inc. Thus, although the investors in GLH Muskegon thought they were owners of 22.5% of the shares of a company that owned the Muskegon business, through some sham corporate transfers it appears Leonowicz personally ended up as the owner of that business.  At the same time, Ownbey is listed in the State of Michigan corporate records as the sole officer and director of GLH Muskegon.

## COUNT I

### VIOLATION OF EXCHANGE ACT SECTION 10(b) AND RULE 10b-5
### (Against All Defendants)

104.    5 Guys repeats and incorporates all allegations above as though fully set forth here again verbatim.

105.    17 C.F.R. §240.10b-5, commonly known as Rule 10b-5, states as follows:

> . . . It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a)  To employ any device, scheme, or artifice to defraud,
>
> (b)  To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c)  To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

106.    As set forth above, Defendants knowingly and intentionally made numerous materially false and misleading statements and omissions in the PPM. These included the misrepresentation that the Muskegon dispensary was a "new business," the fraudulent concealment of the material fact that the dispensary had actually been previously operated by Fanta and Leonowicz and had failed as a business, the misrepresentation that the investors' $1.5 million would be used for the business operations of the dispensary, the fraudulent concealment of the material fact that the investors' money was instead pocketed by Fanta and Leonowicz who relied on Ownbey to pay all expenses for business operations, and the failure to provide material information about the ownership and operation of the business, including undisclosed related-party transactions.

22

107.    Because the PPM was prepared by Leonowicz, and Fanta and Ownbey were involved in the management of the business, they knew or should have known that false and misleading statements were made in the PPM, and that material facts were omitted from the PPM.

108.    5 Guys relied on the information in the PPM to invest $1.5 Million in GLH Muskegon.

109.    Had 5 Guys been informed of the true facts, including the fact that the Muskegon dispensary had failed as a business one year before and the fact that the $1.5 million investment would not be used to capitalize the business but would instead be pocketed by Fanta and Leonowicz, 5 Guys would never have made the investment in GLH Muskegon.

110.    5 Guys has been damaged by Defendants' misrepresentations and omissions because $1,250,000 of its investment has not been returned.  5 Guys has also lost the ability to earn interest on those funds since the time of the investment.

111.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

112.    As a direct and proximate result of Defendants' wrongful conduct, 5 Guys suffered damages in connection with its purchase of the stock in GLH Muskegon.

WHEREFORE, 5 Guys respectfully requests that this Court enter a Judgment against all Defendants, and order the refund of its investment in GLH Muskegon, and award 5 Guys all other relief as may be just and equitable, including, but not limited to, costs, prejudgment and postjudgment interest, and reasonable attorney fees.

## COUNT II

## VIOLATION OF MICHIGAN UNIFORM SECURITIES ACT
### (Against All Defendants)

113.    5 Guys repeats and incorporates all allegations above as though fully set forth here

again verbatim.

114.    Michigan adopted the Uniform Securities Act, M.C.L. 451.2101, *et seq.*, in 2009,

so it applies to the transactions at issue in this case.

115.    The shares of Class B stock of GLH Muskegon purchased by 5 Guys are securities,

as defined by the Uniform Securities Act.

116.    Under M.C.L. 451.2501,

It is unlawful for a person, in connection with the offer, sale, or
purchase of a security or the organization or operation of a Michigan
investment market under article 4A, to directly or indirectly do any
of the following:

(a)  Employ a device, scheme, or artifice to defraud.

(b)  Make an untrue statement of a material fact or omit to state a
material fact necessary in order to make the statements made, in the
light of the circumstances under which they were made, not
misleading.

(c)  Engage in an act, practice, or course of business that operates
or would operate as a fraud or deceit on another person.

117.    The Uniform Securities Act establishes civil liabilities for violation of the Act.

M.C.L. 451.2509(2) states:

(2) A person is liable to the purchaser if the person sells a security
in violation of section 301, or by means of an untrue statement of a
material fact or an omission to state a material fact necessary in
order to make the statement made, in light of the circumstances
under which it is made, not misleading, the purchaser not knowing
the untruth or omission, and the seller not sustaining the burden of
proof that the seller did not know and, in the exercise of reasonable

care, could not have known of the untruth or omission. All of the following apply to an action under this subsection:

(a) The purchaser may maintain an action to recover the consideration paid for the security, less the amount of any income received on the security, and interest at 6% per year from the date of the purchase, costs, and reasonable attorney fees determined by the court, upon the tender of the security, or for actual damages as provided in subdivision (c).

(b) The tender referred to in subdivision (a) may be made any time before entry of judgment. Tender requires only notice in a record of ownership of the security and willingness to exchange the security for the amount specified. A purchaser that no longer owns the security may recover actual damages as provided in subdivision (c).

(c) Actual damages in an action arising under this subsection are the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it and interest at 6% from the date of purchase, costs, and reasonable attorney fees determined by the court.

118.    As set forth above, Defendants knowingly and intentionally made numerous materially false and misleading statements and omissions in the PPM.  These included the misrepresentation that the Muskegon dispensary was a "new business," the fraudulent concealment of the material fact that the dispensary had actually been previously operated by Fanta and Leonowicz and had failed as a business, the misrepresentation that the investors' $1.5 million would be used for the business operations of the dispensary, the fraudulent concealment of the material fact that the investors' money was instead pocketed by Fanta and Leonowicz who relied on Ownbey to pay all expenses for business operations, and the failure to provide material information about the ownership and operation of the business, including undisclosed related-party transactions.

119.    Because the PPM was prepared by Leonowicz, and Fanta and Ownbey were involved in the management of the business, they knew or should have known that false and misleading statements were made in the PPM, and that material facts were omitted from the PPM.

120.    5 Guys relied on the information in the PPM to invest $1.5 Million in GLH Muskegon.

121.    Had 5 Guys been informed of the true facts, including the fact that the Muskegon dispensary had failed as a business one year before and the fact that the $1.5 million investment would not be used to capitalize the business but would instead be pocketed by Fanta and Leonowicz, 5 Guys would never have made the investment in GLH Muskegon.

122.    5 Guys has been damaged by Defendants' misrepresentations and omissions because $1,250,000 of its investment has not been returned.  5 Guys has also lost the ability to earn interest on its funds since the time of the investment.

123.    By virtue of the foregoing, Defendants violated the Uniform Securities Act.

124.    As a direct and proximate result of Defendants' wrongful conduct, 5 Guys suffered damages in connection with its purchase of the stock in GLH Muskegon.

WHEREFORE, 5 Guys respectfully requests that this Court enter a Judgment against all Defendants, and order the refund of its investment in GLH Muskegon, and award 5 Guys all other relief as may be just and equitable, including, but not limited to, costs, prejudgment and postjudgment interest, and reasonable attorney fees.

## COUNT III

### FRAUDULENT MISREPRESENTATION AND CONCEALMENT
**(Against All Defendants)**

125.    5 Guys repeats and incorporates all allegations above as though fully set forth here again verbatim.

26

126.    As set forth above, Defendants knowingly and intentionally made false representations and concealed material facts in the PPM, including the misrepresentation that the Muskegon dispensary was a "new business," the fraudulent concealment of the material fact that the dispensary had actually been previously operated by Fanta and Leonowicz and had failed as a business, the misrepresentation that the investors' $1.5 million would be used for the business operations of the dispensary, the fraudulent concealment of the material fact that the investors' money was instead pocketed by Fanta and Leonowicz who relied on Ownbey to pay all expenses for business operations, and the failure to provide material information about the ownership and operation of the business, including undisclosed related-party transactions.

127.    Defendants knew that those misrepresentations and fraudulent omissions were false and misleading. Defendants acted willfully, wantonly and intentionally in making the misrepresentations and fraudulent omissions.

128.    5 Guys reasonably relied on those false representations and fraudulent omissions when it purchased the Class B stock in GLH Muskegon.

129.    Had 5 Guys been informed of the true facts, including the fact that the Muskegon dispensary had failed as a business one year before and the fact that the $1.5 million investment would not be used to capitalize the business but would instead be pocketed by Fanta and Leonowicz, 5 Guys would never have made the investment in GLH Muskegon.

130.    5 Guys has suffered damages as a result of its reliance on the false representations and omissions to state material facts.  $1,250,000 of its investment has not been returned, and 5 Guys has also lost the ability to earn interest on its funds since the time of the investment.

WHEREFORE, 5 Guys respectfully requests that this Court enter a Judgment in its favor and against Defendants in an amount to be determined by this Court, and for all other equitable or

legal relief that the Court deems appropriate, together with prejudgment and postjudgment interest, costs and reasonable attorney fees.

## COUNT IV

### SILENT FRAUD
### (Against All Defendants)

131.    5 Guys repeats and incorporates all allegations above as though fully set forth here again verbatim.

132.    Michigan case law provides that a claim of fraud can include silent fraud, which requires the plaintiff to prove that:

    a.    the defendant had a legal duty to make disclosure;

    b.    the defendant's failure to disclose was for the purpose of inducing reliance by the plaintiff;

    c.    the nondisclosure was misleading because of the defendant's words or conduct;

    d.    the defendant knew that the nondisclosure would be misleading;

    e.    the plaintiff acted in reliance on the misimpression created by the defendant; and

    f.    the plaintiff was damaged as a result of the failure to disclose.

*Maurer v. Fremont Ins Co*, 325 Mich. App. 685, 695, 926 N.W.2d 848 (2018) (citing *M&D, Inc v. McConkey*, 231 Mich. App. 22, 585 N.W.2d 33 (1998)).

133.    In Michigan, a party is under a duty to use diligence in making a complete disclosure of facts where partial disclosure may convey false impressions and mislead the plaintiff. Such half-truths or nondisclosures are considered to be concealment of facts and, therefore,

misrepresentations. *Great American Ins. Co v. Dunn Corp.*, 580 F. Supp. 1287, 1289 (W.D. Mich. 1984) (quoting *Strand v. Librascope, Inc*, 197 F. Supp. 743, 753 (E.D. Mich. 1961)).

134.    By failing to disclose all relevant facts, including the fact that the business had failed one year before and the fact that Fanta and Leonowicz pocketed the $1.5 million for themselves, Defendants deceived 5 Guys into purchasing stock in GLH Muskegon.

135.    5 Guys had no reason to know that Defendants had withheld information from it.

136.    5 Guys relied on Defendants' representations and the misimpressions caused by Defendants' fraudulent nondisclosures when it purchased the shares of stock in GLH Muskegon.

137.    5 Guys has suffered damages as a result of Defendants' conduct.  $1,250,000 of its investment has not been returned, and 5 Guys has also lost the ability to earn interest on its funds since the time of the investment.

WHEREFORE, 5 Guys respectfully requests that this Court enter a Judgment in its favor and against Defendants in an amount to be determined by this Court, and for all other equitable or legal relief that the Court deems appropriate, together with prejudgment and postjudgment interest, costs and reasonable attorney fees.

## COUNT V

### INNOCENT MISREPRESENTATION
### (Against All Defendants)

138.    5 Guys repeats and incorporates all allegations above as though fully set forth here again verbatim.

139.    Michigan case law provides that the elements of innocent misrepresentation are:

a.    a representation in a transaction between two parties;

b.    that is false;

c.    that actually deceives the other party;

29

      d.      that the other party relied on;

      e.      that the other party suffered damage from; and

      f.      that the party making the misrepresentation benefited from it.

*Dugan v. Vlcko*, 307 F. Supp. 3d 684, 95 U.C.C. Rep. Serve 2d 623 (E.D. Mich. 2018).

140.    As has been alleged above, Defendants made representations in the PPM, including the representation that the Muskegon dispensary was a new business and the representation that the $1.5 million investment would be used to capitalize GLH Muskegon's business.

141.    The representations were false.

142.    Defendants' false statements actually deceived 5 Guys.

143.    5 Guys relied on the statements made by Defendants.

144.    Defendants benefited from the misrepresentations. Defendants received $1.5 Million, and have only returned $250,000 of that investment.

WHEREFORE, 5 Guys respectfully requests that this Court enter a Judgment in its favor and against Defendants in an amount to be determined by this Court, and for all other equitable or legal relief that the Court deems appropriate, together with prejudgment and postjudgment interest, costs and reasonable attorney fees.

## COUNT VI

### VIOLATION OF MICHIGAN BUSINESS CORPORATION ACT BY FAILING TO SEND FINANCIAL STATEMENTS TO SHAREHOLDER
### (Against GLH Muskegon)

145.    5 Guys repeats and incorporates all allegations above as though fully set forth here again verbatim.

146.    Under MCL §450.1487(1), upon request of a shareholder, a corporation must send a shareholder copies of the corporation's balance sheet as of the preceding fiscal year, the

corporation's statement of income for the preceding fiscal year, and a statement of the corporation's source and application of funds for the preceding fiscal year.

147.    It is not necessary for the shareholder to state a purpose for requesting the financial statements of the corporation.

148.    5 Guys requested copies of the financial statements covered by MCL § 450.1487(1) in writing from Defendants.

149.    Defendant GLH Muskegon has violated the Michigan Business Corporation Act, specifically MCL §450.1487(1), by failing and refusing to provide 5 Guys with the requested financial statements.

150.    This Court should order Defendant GLH Muskegon to provide 5 Guys with the requested financial statements.

151.    MCL 450.1487(5) requires the Court to award costs and reasonable attorney fees in an action to enforce the provisions of MCL 450.1487.

152.    5 Guys is entitled to recover from Defendant GLH Muskegon its reasonable costs and attorney fees for having to file this lawsuit.

WHEREFORE, 5 Guys respectfully requests that this Court enter a Judgment in its favor and against Defendant GLH Muskegon in an amount to be determined by this Court, and for all other equitable or legal relief that the Court deems appropriate, together with costs and reasonable attorney fees.

## COUNT VII

### VIOLATION OF MICHIGAN BUSINESS CORPORATION ACT BY REFUSING TO ALLOW SHAREHOLDER TO REVIEW CORPORATE RECORDS
#### (Against GLH Muskegon)

153.    5 Guys repeats and incorporates all allegations above as though fully set forth here again verbatim.

154.    Under MCL §450.1487(2) and (6), a corporation must permit a shareholder to review its books and records upon the statement of a proper business purpose by the shareholder.

155.    5 Guys complied with the requirements of the Michigan Business Corporation Act by requesting Defendants to allow it to review corporate records, and stating a proper purpose for that review. 5 Guys wishes to view those documents in order to determine the value of its shares.

156.    Defendant GLH Muskegon has violated the Michigan Business Corporation Act, specifically MCL §450.1487(2) and (6), by failing and refusing to allow 5 Guys to review the requested corporate records of Defendants.

157.    The Court should order Defendant GLH Muskegon to allow 5 Guys to review and copy the requested corporate records of Defendant.

158.    MCL 450.1487(5) requires the Court to award reasonable attorney fees in an action to enforce the provisions of MCL 450.1487.

159.    5 Guys is entitled to recover from Defendants its reasonable costs and attorney's fees for having to file this lawsuit.

WHEREFORE, 5 Guys respectfully requests that this Court enter a Judgment in its favor and against Defendant GLH Muskegon in an amount to be determined by this Court, and for all other equitable or legal relief that the Court deems appropriate, together with costs and reasonable attorney fees.

## COUNT VIII
## BREACH OF FIDUCIARY DUTY
### (Against Fanta, Leonowicz and Ownbey)

160.    5 Guys repeats and incorporates all allegations above as though fully set forth here again verbatim.

161.    As managers, officers or directors of GLH Muskegon, Fanta, Leonowicz and Ownbey owed fiduciary duties to the shareholders to act in the best interests of the corporation and the shareholders in the conduct of that company's affairs.

162.    The fiduciary duties of Fanta, Leonowicz and Ownbey included the duty to exercise the utmost care, good faith and honesty with respect to 5 Guys as investors and shareholders in GLH Muskegon, and the duty to ensure the proper accounting and use of monies provided by 5 Guys in their $1.5 million investment in the shares of GLH Muskegon.

163.    Defendants Fanta, Leonowicz and Ownbey breached their fiduciary obligations to the corporation and 5 Guys by, among other things:

     a.    Failing to properly use the investment funds of 5 Guys to capitalize the operations of GLH Muskegon;

     b.    Using corporate funds for personal use or for entities owned or controlled by Fanta, Leonowicz or Ownbey;

     c.    Manipulating the finances of the company to benefit themselves and harm 5 Guys;

     d.    Failing to maintain and provide to 5 Guys corporate books and records;

     e.    Failing to account for the assets of GLH Muskegon;

     f.    Failing to honestly report to 5 Guys regarding profits and losses in the monthly statements supplied in July-December 2022;

     g.    Failing to honestly inform 5 Guys regarding purported offers to buy GLH Muskegon;

    h.      Failing to honestly inform 5 Guys during the period from April to July 2023 regarding an alleged "forensic" audit of GLH Muskegon purportedly being conducted by an accounting firm and a forensic consultant; and

    i.      Manipulating, secreting, and disregarding the ownership interest of 5 Guys in GLH Muskegon.

164.    As a result of Defendants' breaches of their fiduciary duties, 5 Guys has been damaged in an amount to be determined.

WHEREFORE, 5 Guys respectfully requests that this Court enter a Judgment in its favor and against Defendants Fanta, Leonowicz and Ownbey in an amount to be determined by this Court, and for all other equitable or legal relief that the Court deems appropriate, together with prejudgment and postjudgment interest, costs and reasonable attorney fees.

### COUNT IX
### MINORITY SHAREHOLDER OPPRESSION
### (Against Fanta, Leonowicz and Ownbey)

165.    5 Guys repeats and incorporates all allegations above as though fully set forth here again verbatim.

166.    Under MCLA §450.1489, a shareholder of a Michigan corporation may bring an action in the Circuit Court of the County in which the principal place of business or registered office of the corporation is located, to establish that the acts of the directors or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or to the shareholder.

167.    At all times Fanta, Leonowicz and Ownbey had a duty to exhibit probity and adhere to standards of fair dealing in conducting the affairs of GLH Muskegon, and they knew that shareholders of the company were entitled to rely on the expectation of their honesty and fair dealing.

168.    Defendants Fanta, Leonowicz and Ownbey acted in their own interests and not for the good of GLH Muskegon and its shareholders.  Fanta, Leonowicz and Ownbey have taken numerous actions that are illegal, fraudulent or willfully unfair and oppressive to 5 Guys, including but not limited to:

a.    Failing to properly use the investment funds of 5 Guys to capitalize the operations of GLH Muskegon;

b.    Using corporate funds for personal use or for entities owned or controlled by Fanta, Leonowicz or Ownbey;

c.    Manipulating the finances of the company to benefit themselves and harm 5 Guys.

d.    Failing to maintain and provide to 5 Guys corporate books and records;

e.    Failing to account for the assets of GLH Muskegon;

f.    Failing to honestly report to 5 Guys regarding profits and losses in the monthly statements supplied in July-December 2022;

g.    Failing to honestly inform 5 Guys regarding purported offers to buy GLH Muskegon;

h.    Failing to honestly inform 5 Guys during the period from April to July 2023 regarding an alleged "forensic" audit of GLH Muskegon purportedly being conducted by an accounting firm and a forensic consultant; and

i.    Manipulating, secreting, and disregarding the ownership interest of 5 Guys in GLH Muskegon.

169.    5 Guys has made oral and written demands upon GLH Muskegon, Fanta, and Leonowicz, to cease these fraudulent or willfully unfair and oppressive actions, but Defendants have refused to do so.

170.    This Court has broad authority to fashion a remedy for minority shareholder oppression, including but not limited to:

a.    The dissolution and liquidation of the assets and business of the corporation;

b.    The cancellation or alteration of any provision contained in the articles of incorporation, an amendment of the articles of incorporation, or bylaws of the corporation;

c.    The cancellation, alteration or injunction against a resolution or other act of the corporation;

d.    Causing or prohibiting an act of the corporation or of shareholders, directors, officers or other persons party to the action;

e.    The purchase at fair value of the shares of a shareholder, either by the corporation or by the officers, directors, or shareholders responsible for the wrongful acts; and

f.    Awarding damages to 5 Guys as an oppressed shareholder.

WHEREFORE, 5 Guys respectfully requests that this Court enter a Judgment in its favor and against Defendants in an amount to be determined by this Court, and for all other equitable or legal relief that the Court deems appropriate, together with prejudgment and postjudgment interest, costs and reasonable attorney fees.

## COUNT X
## COMMON LAW CONVERSION
### (Against All Defendants)

171.    5 Guys repeats and incorporates all allegations above as though fully set forth here again verbatim.

172.    5 Guys sought to invest $1.5 million in GLH Muskegon for the purpose of operating and generating investment returns from a Muskegon, Michigan marijuana dispensary, but Defendants wrongfully and intentionally took dominion and control over that money, embezzled it, used it for the personal use of Fanta, Leonowicz and/or Ownbey, and/or improperly transferred it to entities owned or controlled by Fanta, Leonowicz and/or Ownbey.

173.    After two return-of-capital payments totaling $250,000, Defendants have wrongfully and intentionally refused to return to the investors the remaining $1,250,000 of their investment.

174.    Defendants' conduct constitutes the conversion of the investment funds of 5 Guys.

175.    5 Guys has suffered damages in excess of $1,250,000, including interest, as a result of the actions of Defendants.

WHEREFORE, 5 Guys respectfully requests that this Court enter a judgment in its favor and against Defendants in an amount to be determined by this Court, and for all other equitable or legal relief that the Court deems appropriate, together with prejudgment and postjudgment interest, costs and reasonable attorney fees.

## COUNT XI
## STATUTORY CONVERSION (TREBLE DAMAGES)
### (Against All Defendants)

176.    5 Guys repeats and incorporates all allegations above as though fully set forth here again verbatim.

177.    MCL 600.2919a states as follows:

1.    A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees;

    a. Another person's stealing or embezzling property or converting property to the other person's own use.

    b. Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

2.    The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

178.    5 Guys sought to invest $1.5 million in GLH Muskegon for the purpose of operating and generating investment returns from a Muskegon, Michigan marijuana dispensary, but Defendants wrongfully and intentionally took dominion and control over that money, embezzled it, used it for the personal use of Fanta, Leonowicz and/or Ownbey, and/or improperly transferred it to entities owned or controlled by Fanta, Leonowicz and/or Ownbey.

179.    After two return-of-capital payments totaling $250,000, Defendants have wrongfully and intentionally refused to return to the investors the remaining $1,250,000 of their investment.

180.    Defendants' conduct constitutes the conversion of the investment funds of 5 Guys.

181.    5 Guys has suffered damages in excess of $1,250,000, including interest, as a result of the actions of Defendants.

182.    The amount of Plaintiff's actual damages must be trebled because of Defendants' violation of the conversion statute, MCL 600.2919a.

WHEREFORE, 5 Guys respectfully requests that this Court enter a judgment in its favor and against Defendants in an amount to be determined by this Court, award three times the amount in actual damages sustained by Plaintiff, and for all other equitable or legal relief that the Court deems appropriate, together with prejudgment and postjudgment interest, costs and reasonable attorney fees.

### COUNT XII
### PIERCING CORPORATE VEILS
**(Against Fanta, Leonowicz and Ownbey)**

183.    5 Guys repeats and incorporates all allegations above as though fully set forth here again verbatim.

184.    GLH Muskegon, GLH, Redbud, and Roots are mere instrumentalities of Fanta, Leonowicz, and Ownbey.

185.    GLH Muskegon, GLH, Redbud, and Roots have been used by Fanta, Leonowicz and Ownbey to commit fraud or wrongs, using the entities interchangeably to wrongfully avoid debts and liabilities.

186.    Fanta, Leonowicz and Ownbey do not treat the entities as separate and distinct from themselves. They have wrongfully commingled funds, as well as transferred funds between entities in sham transactions to suit their needs.

WHEREFORE, 5 Guys requests this Court to enter Judgment in its favor against Defendants Fanta, Leonowicz, and Ownbey in an amount to be determined by this Court, pierce the corporate veils of GLH Muskegon, GLH, Redbud and Roots so that the individuals Fanta, Leonowicz and Ownbey are deemed personally liable for their fraud and wrongs, and for all other equitable or legal relief that the Court deems appropriate, plus prejudgment and postjudgment interest, costs and attorney fees.

Respectfully submitted,

DEMOREST LAW FIRM, PLLC

By: _/s/  Mark S. Demorest_____
Mark S. Demorest (P35912)
Michael K. Hayes (P75419)
Attorneys for Plaintiff
322 W. Lincoln Ave.
Royal Oak MI 48067
(248) 723-5500
mark@demolaw.com
mike@demolaw.com

Dated:  December 6, 2024

## JURY DEMAND

Plaintiff, 5 Guys Management, Inc., hereby demands a trial of this matter by jury.

Respectfully submitted,

DEMOREST LAW FIRM, PLLC

By: _/s/ Mark S. Demorest_
Mark S. Demorest (P35912)
Michael K. Hayes (P75419)
Attorneys for Plaintiff
322 W. Lincoln Ave.
Royal Oak MI 48067
(248) 723-5500
mark@demolaw.com
mike@demolaw.com

Dated:  December 6, 2024

## INDEX OF EXHIBITS

EX 1        Private Placement Memorandum for Great Lakes Holistics, Inc. (without exhibits)

EX 2        Promotional materials concerning proposed Chicago investment opportunity transmitted to 5 Guys Management, Inc. by Christopher Fanta  on March 2, 2023

EX 3        April 24, 2023 Affidavit of Jacob Ownbey (*Redbud Roots Lab VIII, Inc., et al. v. Management 12 LLC, et al.*, Case No. 23-001871-CKB, Muskegon County Circuit Court) (without exhibits)

EX 4        January 23 and 25, 2023 e-mail exchange between Alex Leonowicz and Jack Burnett (notations of Mr. Leonowicz shown in red ink)

EX 5        Purported accounting and forensic consultant materials from the accounting firm Marcias Gini & O'Connell LLP and the consulting firm Cendrowski Corporate Advisors transmitted to 5 Guys Management, Inc. by Alex Leonowicz on July 15, 2023

5 Guys Management Inc/Redbud Roots Lawsuit (1884)/1 Draft Pleadings/2024 11 27 Complaint (Client Redlined Changes).docx