IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

5 GUYS MANAGEMENT, INC., an Illinois
corporation,

      Plaintiff,

v

GREAT LAKES MUSKEGON, INC., a Michigan
Corporation; REDBUD ROOTS LAB VIII, INC., a
Michigan corporation, REDBUD ROOTS, INC., a
Michigan corporation; GREAT LAKES HOLISTICS,
LLC, a Michigan limited liability company;
CHRISTOPHER FANTA, an individual; ALEX
LEONOWICZ, an individual; and JACOB OWNBEY,
an individual,

      Defendants.

Case No. 24-cv-01297

Judge Hala Y. Jarbou

Magistrate Judge Sally Berens

**DEFENDANTS/COUNTER-PLAINTIFFS REDBUD ROOTS, INC. AND REDBUD ROOTS LAB VIII, INC.'S SUPPLEMENTAL BRIEF REGARDING FEDERAL ILLEGALITY**

**TABLE OF CONTENTS**

INDEX OF AUTHORITIES .......................................................................................... ii

INTRODUCTION.................................................................................................1

ARGUMENT ........................................................................................................1

I.      THE LAW REGARDING CANNABIS IN FEDERAL COURTS. ...........................................1

II.     THE CLAIMS AT ISSUE HERE REQUIRE THE COURT TO VIOLATE THE CSA................6

        A.      The PPM warned 5 Guys of federal illegality. ......................................................6

        B.      Every claim 5 Guys pleads requires the Court to enforce a federally-
                illegal venture. .......................................................................................8

        C.      5 Guys asserts its funds were moved from one federally-illegal
                cannabis company to another. ...........................................................................10

        D.      The mere act of investing in a cannabis operation is itself a federal
                crime, and the Court cannot grant relief that validates that crime. .................11

        E.      5 Guys' focus on what the $1,500,000 should have been used for
                would also require the Court to endorse federally-illegal activity. .................14

CONCLUSION ..................................................................................................14

CERTIFICATE OF WORD COUNT....................................................................................15

# INDEX OF AUTHORITIES

**Cases**

*AgriAuto Genetics, LLC v. Harris*, No. 22-cv-273, 2023 WL 8371940 (E.D. Okla. Dec. 4, 2023) ........................................................................................................ 5, 14

*CCH Acquisitions, LLC v. J&J&D Holdings, LLC*, 2:23-cv-2983, 2025 WL 601249 (S.D. Ohio Feb. 25, 2025) .......................................................................... passim

*Gonzales v. Raich*, 545 U.S. 1 (2005)........................................................................ 3

*Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692 (6th Cir. 2017) ...................................................................... 2, 8, 13

*In re Malul*, 614 B.R. 699 (Bankr. D. Colo. 2020)..................................................... 13

*Jackson Purchase Rural Elec. Coop. Ass'n v. Loc. Union 816, Int'l Broth. of Elec. Workers*, 646 F.2d 264 (6th Cir. 1981) ............................................... 2, 11

*Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982) ..................................... 1, 8, 11, 13

*Kelly v. Kosuga*, 358 U.S. 516 (1959)............................................................. 2, 8, 10

*Kornea v. Miller*, 797 F. Supp.3d 295 (S.D.N.Y. 2025) .......................................... 3, 8

*Lowe v. City of Detroit*, 544 F. Supp.3d 804 (E.D. Mich. 2021) ................................. 3

*McMullen v. Hoffman*, 174 U.S. 639 (1899)...................................................... 2, 5, 8

*NPG, LLC v. City of Portland*, Case No. 2:22-cv-00208-NT, 2020 WL 4741913 (D. Maine, August 14, 2020) ............................................................................ 3

*Palmer v. Montana Department of Health & Human Services*, Case No. CV21-38-BLG-SPW-TJC, 2022 WL 457456 (D. Montana, Feb. 15, 2022)............................ 3

*PolyOne Corporation v. Westlake Vinyls, Inc.*, 937 F.3d 692 (6th Cir. 2019) ..................... 2, 11

*Sensoria, LLC v. Kaweske*, 548 F. Supp.3d 1011 (D. Colo. 2021) ..................... 4, 5, 12

*Shulman v. Kaplan*, 58 F.4th 404 (9th Cir. 2023) .................................................... 12

*United States v. Walsh*, 654 Fed. Appx. 689 (6th Cir. 2016) ....................................... 3

*Viridis North, LLC v. Kluytman*, Case No. 1:22-cv-283, 2023 WL 5058087 (W.D. Mich., June 2023)........................................................................................................................ 4

*Yeager v. McLellan*, 177 S.W.3d 807 (Ky. 2005) ....................................................................... 2

**Statutes**

15 U.S.C. § 78aa(a) ..................................................................................................................... 6

21 U.S.C. §§ 801-904 ........................................................................................................... passim

28 U.S.C. § 1391(b) ..................................................................................................................... 6

MCL 333.26421 ........................................................................................................................... 3

MCL 333.27951 ........................................................................................................................... 3

**Other Authorities**

8 Richard A. Lord, Williston on Contracts, § 19:12 (4th ed. 2012) .......................................... 3

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................................... 1, 14

**INTRODUCTION**

On April 14, 2026, the Court entered an order directing Defendants/Counter-Plaintiffs Redbud Roots, Inc. ("Redbud Roots") and Redbud Roots Lab VIII, Inc. ("Lab VIII" and collectively with Redbud Roots, "Redbud") to provide supplemental briefing on "whether the Court can grant relief on claims regarding a marijuana business that is criminal under federal law," specifically the Controlled Substances Act (the "CSA") (21 U.S.C. §§ 801-904) (the "Supplemental Order"). (ECF No. 123, PageID.5204). Based on the authority gathered in the Court's Supplemental Order and the authorities cited and explained below, the Court should dismiss this case in its entirety and enter judgment in Redbud's favor. No matter how the facts are viewed, the business venture at issue here is illegal under federal law, and the Court cannot enter judgment in Plaintiff/Counter-Defendant 5 Guys Management, Inc.'s ("5 Guys") favor. As a necessary consequence, even with all disputed facts being resolved and all reasonable inferences viewed in the light most favorable to 5 Guys under Federal Rule of Civil Procedure 56(a)—or if the Court were to go a step further and accept as true all of 5 Guys' factual allegations in the Complaint—the Court could not grant 5 Guys any relief because it would be enforcing an unlawful agreement or endorsing an unlawful enterprise made in violation of the CSA. Redbud is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(a), and the Court should grant Redbud's Motion for Summary Judgment.

**ARGUMENT**

**I.    THE LAW REGARDING CANNABIS IN FEDERAL COURTS**.

As a general matter, federal courts may not assist "in any way towards carrying out the terms of an illegal contract." *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (1982) (quoting

*McMullen v. Hoffman*, 174 U.S. 639, 654 (1899)) (Cleaned up); *see also Kelly v. Kosuga*, 358

U.S. 516, 519 (1959) ("[T]he effect of illegality under a federal statute is a matter of federal

law . . . even in diversity actions in the federal courts[.]"); *Jackson Purchase Rural Elec. Coop.*

*Ass'n v. Loc. Union 816, Int'l Broth. of Elec. Workers*, 646 F.2d 264, 267 (6th Cir. 1981) ("[O]ne

who has himself participated in an illegal act cannot be permitted to assert in a court of

justice any right founded upon growing out of the illegal transaction."). Indeed:

> It is a basic principle of contract law that a court "may refuse to enforce a
> contract on grounds of illegality where the contract has a direct objective or
> purpose that violates the federal or a state Constitution, a statute, an
> ordinance, or the common law."

*PolyOne Corporation v. Westlake Vinyls, Inc.*, 937 F.3d 692, 701 (6th Cir. 2019) (quoting

*Yeager v. McLellan*, 177 S.W.3d 807, 809 (Ky. 2005)).

While there is a distinction between cases where parties seek to enforce "a promise

that was legal, even though the promise was part of an agreement containing a separate,

illegal provision" and cases where the promise was "deemed illegal in and of itself," *Hemlock*

*Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692, 699 (6th

Cir. 2017), the court will ultimately decline to enforce contracts where "the judgment of the

Court would itself be enforcing the precise conduct made unlawful by federal statute." *Id.* at

698 (quoting *Kelly*, 358 U.S. at 520).  The potential illegality of a contract can be raised by the

Court *sua sponte*. *PolyOne*, 937 F.3d at 701 ("[I]f the illegality is serious enough, a court may

raise it sua sponte to avoid becoming an instrument of injustice.") (quoting 8 Richard A. Lord,

Williston on Contracts, § 19:12 (4th ed. 2012)). Nor can the parties waive illegality.[1] (ECF No. 123, Supplemental Order, PageID.5205) (quoting *Kornea v. Miller*, 797 F. Supp.3d 295, 299 (S.D.N.Y. 2025)).

Cannabis has tested our system of federalism and comity between the federal government and the governments of several states, especially in Michigan. While Michigan has decriminalized cannabis for more than 7 years, *see, e.g.*, MCL 333.27951, *et seq.*, and MCL 333.26421, *et seq.*, cannabis has remained criminalized by federal law under the CSA as largely a Schedule I substance. 21 U.S.C. §§ 812(b)(1), (c); *Gonzales v. Raich*, 545 U.S. 1, 14 (2005). By the CSA's terms, marijuana is "contraband for *any purpose.*" *United States v. Walsh*, 654 Fed. Appx. 689, 695 (6th Cir. 2016); *Raich*, 545 U.S. at 27, 29; *Palmer v. Montana Department of Health & Human Services*, Case No. CV21-38-BLG-SPW-TJC, 2022 WL 457456, at *3 (D. Montana, Feb. 15, 2022). Although some courts have allowed cannabis-related suits to proceed given the issues involved were aimed at, among other things, governmental regulations of cannabis that ran afoul with the dormant commerce clause and were outright discriminatory and protectionist motivated ordinances (none of which are present here), *see, e.g.*, *Lowe v. City of Detroit*, 544 F. Supp.3d 804, 816 (E.D. Mich. 2021); *NPG, LLC v. City of Portland*, Case No. 2:22-cv-00208-NT, 2020 WL 4741913, at *8-11 (D. Maine, August 14, 2020), the overwhelming majority of courts that have addressed state-legal but federally-illegal cannabis have resolved the question in favor of providing no relief based on illegality grounds. *See, e.g.*, *Palmer*, 2022 WL 457456, at *3; *Viridis North, LLC v. Kluytman*, Case No.

---

[1] Neither Redbud nor Leonowicz (or Fanta) waived illegality, raising it as an affirmative defense to 5 Guys' claims. (ECF No. 24, PageID.329, Affirmative Defense No. 7).

1:22-cv-283, 2023 WL 5058087, at *2-3 (W.D. Mich., June 2023) (report and recommendation finding no federally recognizable property interest in marijuana license), report and recommendation adopted 2023 WL 4861698; *Sensoria, LLC v. Kaweske*, 548 F. Supp.3d 1011, 1026 (D. Colo. 2021) (dismissing securities fraud claim because "the Court may not vindicate equity in or award profits from a business that grows, processes, and sells marijuana"); *CCH Acquisitions, LLC v. J&J&D Holdings, LLC*, 2:23-cv-2983, 2025 WL 601249, at *3 (S.D. Ohio Feb. 25, 2025) ("federal courts may not assist 'in any way towards carrying out the terms of an illegal contract'").

The court's decision in *CCH Acquisitions* is instructive of the legal principles, and similar to the factual situation, at issue here. In *CCH Acquisitions*, the parties entered into a purchase agreement to sell the plaintiff's real property and marijuana business to the defendant company. 2025 WL 601249, at *1. The sale was "all-inclusive, covering assets of every kind and nature related to the operation of [p]laintiffs' marijuana business." *Id.* (cleaned up). The purchase agreement permitted termination under two scenarios. First, the individual defendant (the defendant-company's owner) was to apply for prequalification from the Michigan Cannabis Regulatory Agency, and he could terminate if prequalification was not received. *Id.* And second, if approval was received, defendants' dissatisfaction with due diligence review. *Id.* at *2. The defendants never applied—"never even tried"—to obtain prequalification. *Id.* The plaintiffs alleged defendants had "misled them into believing closing was on track" for months. *Id.* The plaintiffs sued, citing diversity jurisdiction, bringing breach of contract and related claims. *Id.* at *2. The defendants moved for judgment based on the

pleadings, arguing the case should be dismissed because the agreements at issue violated the CSA. *Id.*

The court agreed and entered judgment in the defendants' favor. The court reasoned that the functional terms of the parties' contract violated the CSA because: (1) it required proof that defendants obtain approval for medical and adult-use licenses in Michigan; and (2) to purchase the marijuana operations, including $500,000 worth of marijuana plants. The court explained those intentions violate the CSA. *Id.* at *4 (citing 21 U.S.C. §§ 841(a)(1) (prohibiting cultivating or distributing marijuana), 846 (criminalizing conspiracies or attempts to violate the CSA)); *Id.* (citing *AgriAuto Genetics, LLC v. Harris*, No. 22-cv-273, 2023 WL 8371940, at *3 (E.D. Okla. Dec. 4, 2023) (finding a contract "directly related to the . . . selling of marijuana" violative of the CSA)). The court also explained that specific performance (an equitable remedy) and damages were unavailable because providing such relief would, in effect, be violative of the CSA. *Id.* at *4-7. The court succinctly noted: "When parties make illegal contracts, 'the law will leave [them] as it finds them.'" *Id.* at *7 (quoting *McMullen*, 174 U.S. at 670). Based on these principles, the court dismissed not only the plaintiffs' breach of contract claim, but also the plaintiffs' fraud, innocent misrepresentation, silent fraud, and unjust enrichment claims as well. *Id.* at *7.

*Sensoria* is also persuasive in terms of equity-investment in cannabis operations. The *Sensoria* plaintiff, like 5 Guys here, was an equity investor in a state-licensed marijuana enterprise who pleaded securities fraud and related theories to recover the investment. 548 F. Supp. 3d at 1018–23. The court dismissed because "the Court may not vindicate equity in or award profits from a business that grows, processes, and sells marijuana." *Id.* at 1026.

**II.     THE CLAIMS AT ISSUE HERE REQUIRE THE COURT TO VIOLATE THE CSA.**

With the above law established, Redbud turns to its application to 5 Guys' claims. The facts show there is no genuine dispute that 5 Guys has been aware of cannabis' illegality under federal law since its entry into GLH Muskegon. And 5 Guys' own arguments and factual assertions show it is trying to enforce rights that are illegal under federal law. The Court should not grant relief to 5 Guys for intentionally, willingly, and knowingly getting involved in an unlawful enterprise and now crying foul once its investment did not turn out as planned.

**A.     The PPM warned 5 Guys of federal illegality.**

5 Guys' entire case, and the grounds for its invocation of this Court's exclusive jurisdiction over security claims under Section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa(a), and 28 U.S.C. § 1391(b), is the PPM. (ECF No. 1, ¶¶ 3, 14-15, PageID.2-3). In fact, 5 Guys confirms this in its Complaint by alleging, among other things, that "[a]ccording to the private placement memorandum received by 5 Guys." (*Id.*, ¶¶ 3-4, PageID.2). 5 Guys even attaches the PPM, as well as other necessary federal investor documents, as Exhibit 1 to its Complaint. (ECF No. 1-1, PageID.43-83)

The PPM warned 5 Guys no less than 4 times that cannabis was illegal under federal law. On page 3, under the heading "Risk of Prosecution," states in bold capital type:

> THE COMPANY INTENDS TO ENTER INTO THE BUSINESS OF DISTRIBUTING PRODUCTS THAT INCLUDE CANNABIS. **CANNABIS IS CLASSIFIED FEDERALLY AS A SCHEDULE 1 CONTROLLED SUBSTANCE. IT IS A FEDERAL CRIME TO DISTRIBUTE OR USE CANNABIS**. IRRESPECTIVE OF ANY STATE LAW, THE FEDERAL GOVERNMENT COULD AT ANY TIME CHOOSE TO PROSECUTE THE COMPANY AND ITS OWNERS. ANY AND ALL **INVESTORS MUST BE WILLING TO BEAR RISK** OF PROSECUTION, PENALTY AND IMPRISONMENT.

(ECF No. 1-1, PageID.44). That paragraph is in the opening pages of the offering document, set off in capital letters.  It is also repeated almost verbatim again later in the PPM's dedicated Risk Factors section, which provides:

> RISK OF PROSECUTION. THE COMPANY INTENDS TO ENTER, DIRECTLY OR THROUGH SUBSIDIARIES OR AFFILIATED BUSINESS ENTITIES, THE BUSINESS OF MANUFACTURING, PRODUCING AND/OR DISTRIBUTING PRODUCTS THAT INCLUDE CANNABIS. **CANNABIS IS CLASSIFIED FEDERALLY AS A SCHEDULE 1 CONTROLLED SUBSTANCE. . . . ACCORDINGLY, IT IS CURRENTLY A FELONY TO DISTRIBUTE, CULTIVATE OR USE CANNABIS. IRRESPECTIVE OF ANY STATE LAW**, INCLUDING THE ACT, THE FEDERAL GOVERNMENT COULD AT ANY TIME CHOOSE TO PROSECUTE THE COMPANY AND ITS OWNERS. ANY AND **ALL INVESTORS MUST BE WILLING TO BEAR THE RISK** OF PROSECUTION, **PENALTY** AND IMPRISONMENT.

(*Id.*, p. 12, PageID.53).

The PPM then dedicates an entire subsection, under the heading "**Impact of U.S. Federal Law – CANNABIS IS FEDERALLY ILLEGAL**," to explaining that "U.S. federal law has prohibited the manufacture and distribution of cannabis since 1935" and that "[t]he United States federal government regulates drugs through the Controlled Substances Act (21 U.S.C. § 801 *et seq.*), which places controlled substances, including cannabis, in various schedules," with cannabis "classified as a Schedule I drug." (*Id.*). And the PPM elsewhere reiterates that cannabis is "a federally illegal Schedule I controlled substance" and acknowledges that "federal money laundering statutes and Bank Secrecy Act regulations discourage financial institutions from working with any organization that sells a controlled substance, regardless of whether the state it resides in permits cannabis sales." (*Id.*, p. 15, PageID.56).

5 Guys received each of these warnings and still chose to invest in GLH Muskegon.

**B.** **Every claim 5 Guys pleads requires the Court to enforce a federally-illegal venture.**

As the Court noted in the Supplemental Order, illegality is an issue the Court may raise *sua sponte* because "it implicates the propriety of granting relief" and "cannot be waived by the parties." (ECF No. 123, PageID.5204–5) (quoting *Kornea*, 797 F. Supp. 3d at 299, and *Kaiser*, 455 U.S. at 84); *see also PolyOne*, 937 F.3d at 701. This rule is an affirmative limitation on federal judicial power: federal courts "may not assist 'in any way towards carrying out the terms of an illegal contract.'" *Kaiser*, 455 U.S. at 77 (quoting *McMullen*, 174 U.S. at 654).

5 Guys cannot escape this limitation by recasting its claims in tort, equity, or under state statute. The Sixth Circuit has instructed that the *dispositive* question is whether "the judgment of the Court would itself be enforcing the precise conduct made unlawful by federal statute." *Hemlock*, 867 F.3d at 698 (quoting *Kelly*, 358 U.S. at 520). This dispositive issue applies to all of 5 Guys' claims, whether captioned as securities fraud, common-law fraud, breach of contract, breach of fiduciary duty, minority shareholder oppression, conversion, statutory conversion, or veil-piercing. The operative test is straightforward: If the judgment the plaintiff seeks would "enforce[] the precise conduct made unlawful by federal statute," the claim fails. *Hemlock*, 867 F.3d at 698.

Here, the operative test is easily applied to every cause of action asserted by 5 Guys, whether based in federal statute or state common law, because each and every claim is based on the same, repetitive factual allegations. Regardless of the theory of liability, the factual narrative in support is the same: (1) a $1,500,000 investment in a Michigan marijuana dispensary; (2) the alleged misuse of those funds among federally-illegal cannabis entities; and (3) the alleged shortfall in returns on 5 Guys' investment. For example:

8

The alleged "misrepresentation" that the "investors' $1.5 million would be used for the business operations of the [marijuana] dispensary" (ECF No. 1, ¶ 126, PageID.27) is the same or similar allegation 5 Guys pleads as silent fraud, fraud, and innocent misrepresentation" (ECF No. 1, ¶¶ 126, 134, 140, PageID.27, 29-30), as the basis for its securities claims (ECF No. 1, ¶¶ 106, 118, PageID.22, 25), and as the predicate "wrongful" conduct supporting both common-law and statutory conversion (ECF No. 1, ¶¶ 172, 178, PageID.36, 38);

The "wrongful and intentional" taking of the $1.5 million wire and the alleged "improper[] transfer[] . . . to entities owned or controlled by Fanta, Leonowicz and/or Ownbey" is pled in identical language for both Count X (common-law conversion) and Count XI (statutory conversion). (ECF No. 1, ¶¶ 172, 178, PageID.36, 38); and

The same allegation of "wrongful and intentional" taking is then incorporated by reference into the breach-of-fiduciary-duty count (Count VIII), where it reappears as a "[f]ail[ure] to properly use the investment funds of 5 Guys to capitalize the operations of GLH Muskegon" ((ECF No. 1, ¶ 163, PageID.33), and into the oppression count (Count IX) and the veil-piercing count (Count XII) (ECF No. 1, ¶¶ 168, 185, PageID.34, 38).

Likewise, every count in the Complaint seeks the same recovery flowing from the same alleged loss: damages in the amount of the unreturned portion of the $1,500,000 5 Guys wired to purchase equity in a federally-illegal cannabis dispensary:

The securities fraud counts seeks the Court to "order the refund of its investment in GLH Muskegon," (ECF No. 1, WHEREFORE Clause, PageID.23, 26);

The fraud counts seek a damages of $1,250,000, plus interest for for having "lost the ability to earn interest on its funds since the time of the investment." (*Id.*, ¶¶ 130, 137, 144, WHEREFORE Clauses, PageID.27-30); and

The conversion counts seek damages for "the remaining $1,250,000 of [the] investment" (*Id.*, ¶¶ 173, 179, WHEREFORE Clauses, PageID.37-38).

In short, the federal-illegality bar and 5 Guys' involvement in a federally-illegal operation necessarily infects and defeats every single claim built on the same allegations. In addition to the federal securities fraud claim (Count I), 5 Guys' Michigan Uniform Securities Act claim (Count II), fraud-based claims (Counts III-V), and conversion claims (Counts X and

9

XI) all depend on the same illegal subject matter. The Court's obligation to decline relief is not changed simply because a claim is cast under Michigan law. *Kelly*, 358 U.S. at 519 (illegality under federal statute governs "even in diversity actions"); *CCH Acquisitions*, 2025 WL 601249, at *7 (dismissing fraud, innocent misrepresentation, silent fraud, and unjust enrichment claims alongside breach of contract). Because all of 5 Guys' claims are built on the same federally-illegal venture, the Court would necessarily have to enforce or promote conduct prohibited by federal statute. The distinction between federal or state-law is irrelevant.

**C.      5 Guys asserts its funds were moved from one federally-illegal cannabis company to another.**

The Complaint further alleges that 5 Guys' investment funds, rather than being deployed at GLH Muskegon, were "improperly transferred . . . to entities owned or controlled by Fanta, Leonowicz and/or Ownbey," including Redbud Roots, Inc. and Redbud Roots Lab VIII, Inc. (ECF No. 1, ¶¶ 172, 178, PageID.36-38). Lab VIII is a marijuana dispensary, and Redbud Roots is a cannabis grower/processor.  Furthermore, one of the gravamen of 5 Guys' claims against Redbud is the money was not sent on to GLH Muskegon, another Michigan cannabis retail location. (ECF No. 84, Redbud Brief for Summary Judgment, PageID.1599 and associated exhibits; ECF No. 99, 5 Guys Response to Redbud Motion for Summary Judgment, PageID.3564-3568 (arguing about where the $1,500,000 went and arguing it should have went to fund GLH Muskegon)). 5 Guys even goes so far as to claim it received less monetary distributions than it should have from the profits of GLH Muskegon—again the unlawful enterprise—because other cannabis-related businesses took other portions of its profits. (ECF No. 99, PageID.3574-3581) (explaining profit distribution 5 Guys received versus

10

alleged monies Redbud or others received). In other words, it argues the fact it did not receive as much profit from the illegal venture was improper and entitles it to the relief requested in the Complaint. *Id.*

Put differently, all of 5 Guys' claims are dependent on the allegations and arguments that dollars moved from one Michigan cannabis entity to another Michigan cannabis entity entitle it to relief. Each claim requires 5 Guys to establish the flow of funds between two federally-illegal businesses. Any judgment tracing, reclaiming, or awarding damages measured by those funds, whether under any theory of liability or recovery, requires the Court to superintend and unwind a transaction between two or more CSA-prohibited enterprises and entities. That is precisely the judicial assistance the Supreme Court and the Sixth Circuit preclude. *Kaiser*, 455 U.S. at 77; *Jackson Purchase*, 646 F.2d at 267; *PolyOne*, 937 F.3d at 701. The same result was reached in *CCH Acquisitions* based on nearly identical factual allegations, when the court dismissed not only the breach-of-contract claim but also the claims of fraud, innocent misrepresentation, silent fraud, and unjust enrichment. 2025 WL 601249, at *7.

**D.      The mere act of investing in a cannabis operation is itself a federal crime, and the Court cannot grant relief that validates that crime**.

In simplest terms, 5 Guys' position is that in exchange for $1,500,000, it was supposed to receive a 22.5% interest in GLH Muskegon via unregistered securities. (ECF No. 99, PageID.3548). That investment structure and exchange, itself, is illegal under federal law. Congress separately criminalized the act of investing in a marijuana enterprise. Under 21 U.S.C. § 854(a), "[i]t shall be unlawful for any person … to use or invest, directly or indirectly, any part of [unlawful drug] income, or the proceeds of such income, in acquisition of any

interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce." The statute defines "enterprise" broadly to include "any individual, partnership, corporation, association, or other legal entity." 21 U.S.C. § 854(c). And Congress directed that § 854 "shall be liberally construed to effectuate its remedial purpose." *Id*. § 854(d).

5 Guys' pleaded conduct and argument fits squarely within § 854. 5 Guys alleges and argues that it "agreed to purchase Class B stock, comprising 22.5% of the issued and outstanding capital stock of GLH Muskegon, for the price of $1.5 Million." (ECF No. 1, ¶ 33, PageID.5; ECF No. 99, PageID.3548). There is no dispute that GLH Muskegon is a Michigan marijuana dispensary. (ECF No. 1, ¶¶ 19, 58, 65, PageID.3, 8-9, 11; ECF No. 84, PageID.1599 and associated exhibits). The acquisition of an equity interest in an enterprise "engaged in" the cultivation, processing, and distribution of a Schedule I controlled substance is the precise transaction § 854 prohibits. The illegality attached the moment 5 Guys executed its investment, regardless of how the funds were utilized thereafter. 5 Guys' claims are therefore predicated entirely on a transaction that was a federal crime at its inception. 5 Guys' securities fraud claims (Counts I and II) are barred as a result.

In *Sensoria*, the court dismissed a Section 10(b) and Rule 10b-5 claim because "the Court may not vindicate equity in or award profits from a business that grows, processes, and sells marijuana." 548 F. Supp. 3d at 1026. *Shulman v. Kaplan* reached the same structural conclusion in the RICO context, holding that plaintiffs lack statutory standing to assert federal claims based on harm to a marijuana business. 58 F.4th 404, 411 (9th Cir. 2023). The label on the claim (10b-5, 17(a), RICO, or common law) does not change what the requested

12

federal relief would *do*: award the plaintiff the economic value of an illegal cannabis investment.

The bankruptcy court's analysis in *In re Malul*, 614 B.R. 699 (Bankr. D. Colo. 2020), illustrates the consequences that naturally arise from being involved in an illegal enterprise. There, an investor purchased an equity interest in a cannabis enterprise that, like GLH Muskegon, never operated as planned. *Id*. at 711–12. The court held that § 854 made the investor's equity interest a "per se illegal asset," and that "[t]here simply is no conceivable circumstance where [the plaintiff] would have claims except by virtue of owning a per se illegal asset." *Id.* at 712. Crucially, the court explained that the result did not depend on whether the enterprise had actually distributed marijuana, or even on the timing of any § 841 violation. The illegality "arose immediately upon the creation of [the plaintiff's] equity interest by virtue of CSA § 854." *Id*. As a result, the "specific legal theory underlying the claims is irrelevant" because, however framed, the plaintiff's damages would be calculated as the value of an interest in a CSA-prohibited enterprise. *Id.*

Here, any judgment in 5 Guys' favor would require the Court to validate not one, but two federal crimes simultaneously: (1) GLH Muskegon's distribution of a Schedule I substance in violation of 21 U.S.C. § 841; and (2) 5 Guys' acquisition of an equity interest in that enterprise in violation of 21 U.S.C. § 854. Either layer alone forecloses relief under the operative test set out by the Sixth Circuit. *Hemlock*, 867 F.3d at 698 (court will not enter a judgment that would "enforc[e] the precise conduct made unlawful by federal statute"); *Kaiser*, 455 U.S. at 77. Together they are dispositive. Redbud is entitled to summary judgment.

**E.      5 Guys' focus on what the $1,500,000 should have been used for would also require the Court to endorse federally-illegal activity.**

In addition to the above, 5 Guys, and several of its shareholders, put significant emphasis on the fact that Fanta allegedly represented that their $1,500,000 investment would be used to buy bulk-flower from Ownbey and GLH as part of operating the Muskegon Dispensary. (ECF No. 84, PageID.1614-1615 and associated exhibits). But that act, itself, is a federal crime prohibited by the CSA. 21 U.S.C. §§ 841(a)(1) (prohibiting cultivating or distributing marijuana) and 846 (criminalizing conspiracies or attempts to violate the CSA). Put differently, in order for 5 Guys to obtain relief, the Court would need to find that Redbud's failure to use the $1,500,000 at issue to fund GLH Muskegon to in turn *purchase bulk cannabis flower* was fraudulent. In essence, the Court would have to endorse use of the investment for a cannabis business and find Redbud did not use the illegal money in the proper and intended illegal way. The Court in *CCH Acquisitions* found this "troublesome" and found it sufficient grounds to deny relief. 2025 WL 601249, at * 5; *see also AgriAuto Genetics*, 2023 WL 8371940, at *3 (finding a contract "directly related to the . . . selling of marijuana" violative of the CSA). The Court cannot enforce 5 Guys' theory of the case without violating the CSA.

**CONCLUSION**

For the foregoing reasons, even if the Court were to decide all of the factual issues alleged in 5 Guys' Complaint or accept as true the factual claims made in its Responses to the three separately-filed motions for summary judgment, the Court could still not rule in 5 Guys' favor, and Redbud would still be entitled to judgment as a matter of law. The Court should enter judgment in Redbud's favor under Federal Rule of Civil Procedure 56(a).

Respectfully submitted,

FOSTER, SWIFT, COLLINS & SMITH, P.C.
Attorneys for Defendants Leonowicz, Fanta,
Redbud Roots, and Redbud Roots Lab VIII

Dated: April 28, 2026      By:     /s/ Brandon M. H. Schumacher
                 Brandon M. H. Schumacher (P82930)
                 313 S. Washington Square
                 Lansing, MI 48933
                 (517) 371-8255
                 bschumacher@fosterswift.com

## CERTIFICATE OF WORD COUNT

Brandon M. H. Schumacher, counsel for Defendants/Counter-Plaintiffs Redbud Roots, Inc. and Redbud Roots Lab VIII, Inc. (collectively "Defendants"), certifies that the Supplemental Brief Regarding Illegality of Defendant/Counter-Plaintiffs Redbud Roots, Inc. and Redbud Roots Lab VII, Inc.'s consisting of 4,938 words (exclusive of cover sheets, tables of contents/authorities, and exhibits), was generated in Microsoft Word.

Respectfully submitted,
FOSTER, SWIFT, COLLINS & SMITH, P.C.
Attorneys for Leonowicz,
Redbud Roots, and Redbud Roots Lab VIII

Dated: April 28, 2026      By:     /s/ Brandon M. H. Schumacher
                 Brandon M. H. Schumacher (P82930)
                 313 S. Washington Square
                 Lansing, MI 48933
                 (517) 371-8255
                 bschumacher@fosterswift.com

37718:00003:202635698-1