IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

5 GUYS MANAGEMENT, INC., an Illinois corporation,

     Plaintiff,

v

GREAT LAKES MUSKEGON, INC., a Michigan Corporation; REDBUD ROOTS LAB VIII, INC., a Michigan corporation, REDBUD ROOTS, INC., a Michigan corporation; GREAT LAKES HOLISTICS, LLC, a Michigan limited liability company; CHRISTOPHER FANTA, an individual; ALEX LEONOWICZ, an individual; and JACOB OWNBEY, an individual,

     Defendants.

Case No. 24-cv-01297

Judge Hala Y. Jarbou

Magistrate Judge Sally Berens

**DEFENDANTS/COUNTER-PLAINTIFFS REDBUD ROOTS, INC. AND REDBUD ROOTS LAB VIII, INC. AND DEFENDANT ALEX LEONOWICZ'S JOINT REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF REGARDING FEDERAL ILLEGALITY**

4908-4698-9741, v. 1

**TABLE OF CONTENTS**

INDEX OF AUTHORITIES ............................................................................................ ii

INTRODUCTION.........................................................................................................1

ARGUMENT ...............................................................................................................2

I.      5 GUYS DOES NOT DISPUTE THE UNLAWFUL NATURE OF CANNABIS UNDER FEDERAL LAW OR ITS APPLICATION TO THIS CASE. ....................................................2

II.     PLAINTIFF'S RELIANCE ON *SENSORIA*'S RESCISSION AND FUND ORIGINATION REASONING IS MISPLACED.................................................................3

     A.      *Sensoria* involved an investor that never received payments from the illegal enterprise.....................................................................................4

     B.      Personal receipt of funds and contracts are lacking. ........................................5

     C.      The "mismanagement, fraud, and theft" language 5 Guys quotes is from *Sensoria*'s derivative-claims discussion. .......................................6

III.    *SENSORIA'S* RESCISSION AND FUND ORIGINATION HOLDING IS UNRELIABLE AND INCONSISTENT WITH THIS CIRCUIT AND OTHER CIRCUIT'S DECISIONS. ........................................................................................7

IV.     RESCISSION IS INDEPENDENTLY UNAVAILABLE..........................................................9

V.      IT WILL NOT BE AN UNJUST RESULT TO FOR THE COURT TO LEAVE 5 GUYS AS IT FOUND THEM.................................................................................13

VI.     THE CSA ILLEGALITY DEFENSE CANNOT BE WAIVED. ................................................13

VII.    THE FORUM-SELECTION CLAUSE IS NOT A WAIVER OF CSA ILLEGALITY, AND THE PPM GAVE 5 GUYS A STATE-COURT OPTION IT DECLINED. ......................14

VIII.   THERE IS NO CONCEIVABLE REMEDY WHERE 5 GUYS CAN RECOVER FROM REDBUD FOR NON-CANNABIS RELATED ASSETS. ......................................14

CONCLUSION ..........................................................................................................15

CERTIFICATE OF WORD COUNT...............................................................................16

4908-4698-9741, v. 1

## INDEX OF AUTHORITIES

**Cases**

*1240 S. Bannock, LLC v. Siem*, No. 2:21-cv-00183, 2022 WL 2161386 (W.D. Mich. May 27, 2022) (Maloney, J.) ........................................................................................................... 8

*Bart Street III v. ACC Enters., LLC*, 2020 WL 1638329 (D. Nev. Mar. 31, 2020) ...................... 11

*Bartch v. Barch*, 111 F.4th 1043 (10th Cir. 2024) ........................................................................ 5

*Bazzi v. Sentinel Ins. Co.*, 919 N.W.2d 20 (Mich. 2018) ......................................................... 9, 11

*Brown v. VHS of Michigan, Inc.*, 545 Fed. Appx. 368 (6th Cir. 2013) ...................................... 14

*CCH Acquisitions, LLC v J&J&D Holdings, LLC*, Case No. 2:23-cv-2983, 2025 WL 601249 (S.D. Ohio, Feb. 25, 2025) ......................................................................... 3, 6, 8

*Cook v. Wolverine Stockyards Co.*, 73 N.W.2d 902 (Mich. 1955) ............................................. 12

*Erickson v. Pfeister*, Case No. 1:21-cv-00009-JMK, 2023 WL 6297343 (D. Alaska Sept. 27, 2023) ............................................................................................................... 5, 7

*Ginsburg v. ICC Holdings, LLC*, 2017 WL 5467688 (N.D. Tex. Nov. 13, 2017) ......................... 5

*Hemlock Semiconductor Operations, LLC v. SolarWind Indus. Sachsen GmbH*, 867 F.3d 692 (6th Cir. 2017) ....................................................................................................... 7

*Hurd v. Hodge*, 334 U.S. 24 (1948) ............................................................................................ 13

*In re Malul*, 614 B.R. 699 (Bankr. D. Colo. 2020) ....................................................................... 9

*Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982) ..................................................................... 3

*Kornea v. Miller*, 797 F. Supp. 3d 295 (S.D. N.Y. 2025) ................................................. 8, 11, 13

*KSA Enters., Inc. v. Branch Banking and Tr. Co.*, 761 F. App'x 456 (6th Cir. 2019) .................. 6

*Kundel v. Portz*, 3 N.W.2d 61 (1942) ........................................................................................ 10

*Mann v. Gullickson*, No. 15-CV-03630-MEJ, 2016 WL 6473215 (N.D. Cal. Nov. 2, 2016) ......................................................................................................................... 5

*McMullen v. Hoffman*, 174 U.S. 639 (1899) ...................................................................... 2, 8, 12

*National Transformer Corp v. France Mfg. Co.*, 215 F.2d 343 (6th Cir. 1954) ........................ 10

4908-4698-9741, v. 1

*Rose v. National Auction Group, Inc.*, 646 N.W.2d 455 (Mich. 2002) ................................. 10, 11

*Rudisell v. Fifth Third Bank*, 622 F.2d 243 (6th Cir. 1980) .......................................................... 9

*Sensoria, LLC v. Kaweske,* 584 F. Supp. 3d 1011 (D. Colo. 2021) ..................................... passim

*Stachnik v. Winkel*, 230 N.W.2d 529 (Mich. 1975) .................................................................... 10

*Wilmore-Moody v. Zakir*, 999 N.W.2d 1 (Mich. 2023) ............................................................... 10

*Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787 (6th Cir. 2009) ................................. 10, 11

**Statutes**

21 U.S.C. 812 .............................................................................................................................. 2

21 U.S.C. 841 .............................................................................................................. 2, 3, 11, 12

21 U.S.C. 843 ............................................................................................................................ 12

21 U.S.C. 846 ................................................................................................................. 2, 11, 12

21 U.S.C. 854 ................................................................................................................. 2, 11, 12

**Other Authorities**

Rendleman, *Illegal Contracts and Agreements*, 81 Wash. & Lee L. Rev. 711 (2024).............. 14

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 1, 5

iii

**INTRODUCTION**

5 Guys' Response does not dispute that its investment, the dividends it accepted, and the sale proceeds it pocketed all violated the CSA. Its entire escape hatch is a single, isolated portion of one case— *Sensoria, LLC v. Kaweske*. But *Sensoria* cannot carry the weight 5 Guys puts on it. *Sensoria* was decided on a Rule 12(b)(6) motion before discovery; this case is on summary judgment with discovery closed. The *Sensoria* plaintiff received nothing back from the alleged illegal enterprise; 5 Guys received roughly $397,000. *Sensoria* required that the individual defendants personally receive and control the diverted funds; the unrebutted tracing here establishes the $1,500,000 never touched Leonowicz. And the *Sensoria* passage 5 Guys leans on most heavily, its "mismanagement, fraud, and theft" language, is lifted from the part of the opinion dismissing the plaintiff's derivative claims.

Even setting *Sensoria* aside, rescission is independently unavailable. There is no contract between 5 Guys and Leonowicz or Redbud to rescind. Moreover, 5 Guys comes to equity with, among other things, unclean hands. What 5 Guys actually seeks is not rescission but selective unwinding: return the $1,500,000 while it keeps the $397,000. Furthermore, 5 Guys' predicate fraud theory is, in substance, a complaint that Redbud and Leonowicz did not violate the CSA with sufficient enthusiasm. And ordering rescission would itself require the transfer of an equity interest in a cannabis company, another CSA violation this Court cannot command.

The remaining arguments in 5 Guys' Response are immaterial and do not change the outcome. 5 Guys cannot now ask this Court to bend its equitable limits to spare 5 Guys the consequences of its own strategy. The Supreme Court foreclosed this case more than a century ago: "When parties make illegal contracts, the law will leave them as it finds them."

*McMullen v. Hoffman*, 174 U.S. 639, 670 (1899). The Court should grant summary judgment in Redbud and Leonowicz's favor and dismiss 5 Guys' claims with prejudice.

## ARGUMENT

**I.    5 GUYS DOES NOT DISPUTE THE UNLAWFUL NATURE OF CANNABIS UNDER FEDERAL LAW OR ITS APPLICATION TO THIS CASE.**

Redbud and Leonowicz's Supplemental Briefs provided detailed, thorough, and well-cited argument as to why the illegality of cannabis under federal law requires dismissal of 5 Guys' claims. (ECF No. 126, Leonowicz Supplemental Brief, PageID.5240-5255; ECF No. 127, Redbud Supplemental Brief, PageID.5261-5274). Among other things, the Supplemental Briefs explained how 5 Guys' claims are so intertwined with the illegal conduct at issue that there is no possible way for the Court to unwind and fashion a remedy here. (ECF No. 126, PageID.5248-5249, 5252-5253; ECF No. 127, PageID.5268-5270).

5 Guys' Response to Redbud and Leonowicz's Supplemental Briefs is telling, not from what it actually says, but from what it does not say. 5 Guys does not challenge the undisputed fact that 5 Guys' claimed investment in GLH Muskegon (a cannabis dispensary) and involvement with Redbud (a cannabis cultivator and processor) was illegal under the CSA. 21 U.S.C. §§ 812(b)(1), 841(a)(1) 846, 854(a), (c). Instead, 5 Guys focuses only on the illegality of the alleged business operations of Redbud and Leonowicz, but in doing so, 5 Guys fails to address that it was equally culpable and involved with violation of the CSA. 5 Guys made an investment in a cannabis operation (under its theory GLH Muskegon), which is unlawful under 21 U.S.C. §§ 846, 854(a), (c)-(d). Likewise, it is undisputed that 5 Guys received dividends and payments from Redbud for (1) anticipated profits from the Muskegon Dispensary; and then (2) from the sale of the Muskegon Dispensary to another

2

cannabis retailer. (ECF No. 84, PageID.1603-1604; ECF No. 86-9, PageID.2463). The receipt of such money is also unlawful under federal law because it would be generated from conduct proscribed by 21 U.S.C. § 841(a)(1).

5 Guys cannot escape the legal reality that it equally, and knowingly, participated in a business venture prohibited by the CSA, *and* knowingly accepted profit share and other payments from the operations of and sale of the Muskegon Dispensary. Based on these undisputed facts, this Court cannot fashion a remedy (based in contract, tort, or equity) without "assist[ing] in [some] way towards carrying out the terms of an illegal contract." *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (1982).  Every claim asserted by 5 Guys asks (and requires) this Court  "to  . . . accept [5 Guys' own] illegal conduct, and reward [5 Guys] accordingly," *CCH Acquisitions, LLC v J&J&D Holdings, LLC*, Case No. 2:23-cv-2983, 2025 WL 601249, at *3 (S.D. Ohio, Feb. 25, 2025), which means the Court would "ratify unlawful conduct and become complicit in the parties' illicit transaction." *Id*.

## II.    PLAINTIFF'S   RELIANCE   ON   *SENSORIA*'S   RESCISSION   AND   FUND ORIGINATION REASONING IS MISPLACED.

5 Guys' Response relies almost exclusively on the rescission and fund origination (i.e., non-unlawful sources) reasoning contained in *Sensoria, LLC v. Kaweske*, 548 F. Supp. 3d 1011 (D. Colo. 2021), and its progeny. (ECF No. 128, PageID.5286–5291). As discussed below, *Sensoria*'s rescission and fund origination reasoning is factually and procedurally distinguishable. The Court should not give the part of *Sensoria* that 5 Guys latches onto much credence.

A.      *Sensoria* **involved an investor that never received payments from the illegal enterprise.**

Unlike 5 Guys, the plaintiff in *Sensoria* contributed money toward an investment, but never received money back and never received any profits or payments from the alleged illegal enterprise. 548 F.Supp.3d at 1022 ("Sensoria has not received back any of its initial investment, let alone any return on that investment, nor any documentation accounting for the investment apart from share certificates for common stock."). That is not the case here. 5 Guys received six monthly profit distributions from the Muskegon Dispensary's cannabis operations, totaling $147,465.53. (ECF No. 1, Compl. ¶ 35, PageID.5; ECF No. 84, PageID.1601; ECF No. 87-5, PageID.2522). Those distributions were calculated directly from the Muskegon Dispensary's profit-and-loss statements, which were derived from the proceeds from the sale of recreational cannabis. 5 Guys began collecting within roughly thirty days of its July 2022 investment. (ECF No. 87-5, Redbud Check to 5 Guys, PageID.2522). Later, when the Muskegon Dispensary was sold to another cannabis operator in 2024, 5 Guys received another $250,000 from the sale proceeds. (ECF No. 84, PageID.1604; ECF No. 86-9, PageID.2463).

In total, 5 Guys received and accepted approximately $397,000 in cannabis-derived income. Unlike the plaintiff in *Sensoria*, 5 Guys received income (several times) from Schedule I cannabis. 5 Guys was a participant in, and a beneficiary of, the very enterprise that is federally illegal. Despite this, 5 Guys now requests the Court to permit it to recover damages through equitable remedies. *Sensoria* is factually distinguishable on this point.

4

### B.      Personal receipt of funds and contracts are lacking.

In *Sensoria* (and the cases cited by *Sensoria*), the individual defendants personally received and personally controlled the diverted investment funds. *See Sensoria*, *LLC v. Kaweske*, 581 F. Supp. 3d 1243, 1252–55 (2022) (Kaweske and Peterson allegedly diverted $700,000 into their own separate businesses); *Mann v. Gullickson*, No. 15-CV-03630-MEJ, 2016 WL 6473215 (N.D. Cal. Nov. 2, 2016) (defendant personally signed promissory notes); *Bartch v. Barch*, 111 F.4th 1043 (10th Cir. 2024) (individual personally signed the buyout agreement); *Erickson v. Pfeister*, Case No. 1:21-cv-00009-JMK, 2023 WL 6297343 (D. Alaska Sept. 27, 2023) (same); *Ginsburg v. ICC Holdings, LLC*, 2017 WL 5467688 (N.D. Tex. Nov. 13, 2017) (same).

This case is the opposite. Redbud and Leonowicz's expert's tracing, together with the bank records, establishes the $1,500,000 was wired directly from 5 Guys to Redbud Roots. (ECF No. 82-3, PageID.1375–1376). The funds never passed through any personal account of Leonowicz, and he never had constructive possession or control over any portion of the investment. 5 Guys has not produced or identified contradicting or competing evidence to create a genuine dispute of fact on this issue. (ECF No. 120, PageID.5005). The factual predicate every *Sensoria*-line case requires is missing here.

Further, *Sensoria* was decided on a Rule 12(b)(6) motion where discovery could still produce evidence. As a result, *Sensoria* allowed the case to proceed *"because there is that possibility"* that discovery might develop evidence of non-cannabis assets and divertible funds. 581 F. Supp. 3d at 1262. Here, discovery has closed. 5 Guys has had the full discovery period to identify non-cannabis assets at Redbud, to produce a signed contract between 5 Guys and Leonowicz personally, or to muster admissible evidence supporting the *Sensoria*

"possibilities." 5 Guys has nothing and, again, has produced or identified nothing of substance. Dismissal is proper.

### C.    The "mismanagement, fraud, and theft" language 5 Guys quotes is from *Sensoria*'s derivative-claims discussion.

5 Guys features a quotation from *Sensoria* for the proposition that injuries to a cannabis entity from "mismanagement, fraud, and theft" remain remediable in federal court. (ECF No. 128, PageID.5289 (quoting 581 F. Supp. 3d at 1264)). The quotation is divorced from its context. The *Sensoria* court was discussing, and ultimately *dismissing*, the plaintiffs' derivative claims brought on behalf of Clover Top Holdings, Inc. The court held those derivative claims could *not* proceed, because vindicating injuries to a cannabis entity would require the federal court to step into the shoes of a marijuana business. *Id.* at 1264.

In this case, 5 Guys never pleaded or identified a derivative claim, despite trying to rectify injuries belonging to GLH Muskegon. Redbud and Leonowicz raised those deficiencies and 5 Guys' lack of standing in their summary judgment briefing (ECF No. 84, PageID.1612-1615; ECF No. 80, PageID.899-901), and 5 Guys did not respond to or otherwise dispute those arguments. (ECF No. 99, PageID.3550-3552; ECF No. 98, PageID.3538). Not only are 5 Guys' derivative claims against Leonowicz and Redbud forfeited for failure to respond to the motions for summary judgment, *CCH Acquisitions*, 2025 WL 601249, at * 7 (quoting *KSA Enters., Inc. v. Branch Banking and Tr. Co.*, 761 F. App'x 456, 463 (6th Cir. 2019)), but also are barred because they are the very type of injuries the *Sensoria* court refused to remedy.

III.  ***SENSORIA'S*** **RESCISSION AND FUND ORIGINATION HOLDING IS UNRELIABLE AND INCONSISTENT WITH THIS CIRCUIT AND OTHER CIRCUIT'S DECISIONS.**

Beyond its factual and procedural distinctions, *Sensoria* is also an outlier that conflicts with the majority of courts that have addressed this issue. 5 Guys relies on *Sensoria* for the proposition that the Court can allow its claims to continue because recission is an available remedy that would not violate the CSA and that the Court could allow the remedy through payment of a judgment out of non-marijuana related assets. (ECF No. 128, PageID.5286-5291). This ignores two crucial details.

First, with the exception of *Erickson*, 2023 WL 6297343, courts have not embraced or adopted the rescission and fund origination reasoning from *Sensoria* to allow a case to move forward where it raises clear and established violations of the CSA. And even the court in *Sensoria*, itself, recognized it could not "vindicate equity in or award profits from a business that grows, processes, and sells marijuana." 548 F.Supp.3d at 1026. The Court should not adopt *Sensoria*'s position on rescission or fund origination to allow this case to move forward. That part of *Sensoria* is out of line with other decisions addressing this issue, and also ignores crucial parts of the CSA and how they operate in practice with equitable remedies like rescission. *Infra*.

Second, district courts in this and neighboring circuits have found that where the promise was "deemed illegal in and of itself" the court will decline to enforce contracts where "the judgment of the court would itself be enforcing the precise conduct made unlawful by federal statute." *Hemlock Semiconductor Operations, LLC v. SolarWind Indus. Sachsen GmbH*, 867 F.3d 692, 699 (6th Cir. 2017). While not exhaustive, the following cases show *Sensoria*'s rescission and fund origination rationale is an outliner and should not be followed.

7

In *CCH Acquisitions*, the Southern District of Ohio, a sixth circuit court, granted judgment on the pleadings dismissing all claims, breach of contract, promissory estoppel, fraudulent misrepresentation, innocent misrepresentation, unjust enrichment, silent fraud, and tortious interference,  in a dispute over an agreement to  purchase a marijuana business. 2025 WL 601249, at *1. The court noted that "[w]hen parties make illegal contracts, 'the law will leave them as it finds them.'" *Id.* at *7 (quoting *McMullen*, 174 U.S. at 670). The court rejected the plaintiffs' argument that damages could be paid "from a non-marijuana-related source"—the same argument 5 Guys makes here. *Compare Id.* at *6 *with* (ECF No. 128, PageID.5291).

In *Kornea v. Miller*, a district court raised illegality *sua sponte* and dismissed an investor's breach of contract claim against a marijuana joint venture partner. 797 F. Supp. 3d 295, 298, 300 (S.D. N.Y. 2025). The joint venture agreement involved the plaintiffs providing investments of $25,000 each, and then defendant would use that money to bulk purchase marijuana to resell. *Id.* at 297-98. The court held the joint venture agreement was an illegal contract, equitable remedies were unavailable, and the court could not "use its judicial power to" facilitate the cannabis transaction. *Id.* at 301-303.

In *1240 S. Bannock, LLC v. Siem*, No. 2:21-cv-00183, 2022 WL 2161386, at *4 (W.D. Mich. May 27, 2022) (Maloney, J.), this Court held that damages were unavailable for a "failed real estate transaction that had the purpose of allowing the sale of marijuana on the property." The reasoning controls here: the Court "cannot award damages … under a failed purchase agreement that was entered into with the likely intent to carry out acts that would constitute violations of federal law." *Id.* at *6.

8

In *In re Malul*, 614 B.R. 699, 709-11 (Bankr. D. Colo. 2020), a debtor sought to amend her bankruptcy schedules to include a CSA-violative cannabis business. The bankruptcy court denied her request, reasoning:

> There is a critical difference in the nature of the litigation claims at issue in *Burton* compared to *Green Earth Wellness* and *Ginsburg*. . . . [T]he breach of contract claims in *Green Earth Wellness* and *Ginsburg* were based on promissory notes that merely required payment in a specified amount within a specified time. The contracts were not in any way dependent on the circumstantial existence of a marijuana business. In contrast, the damages underlying the Burtons' litigation claims arose entirely out of the Burtons' ownership of an interest in an entity created for the specific purpose of engaging in CSA violations. There would be no litigation recovery but for the existence of the equity interest, and therefore the only possible damages to be recovered were direct proceeds of an illegal venture.

These authorities reflect the governing rule, that courts will not grant relief where doing so would enforce or reward conduct prohibited by federal law. *Sensoria*'s rescission and fund origination reasoning sends a stark contrast to that rule.

## IV.    RESCISSION IS INDEPENDENTLY UNAVAILABLE.

The entire theme of 5 Guys' Response is an attempt to rationalize *Sensoria*'s rescission and fund origination arguments to obtain the equitable remedy of rescission "limited to the individual Defendants' non-marijuana assets." (ECF No. 128, PageID.5281). The facts of this case do not allow the Court to grant this equitable remedy.

Rescission is an equitable remedy. *Rudisell v. Fifth Third Bank*, 622 F.2d 243, 254 (6th Cir. 1980); *Bazzi v. Sentinel Ins. Co.*, 919 N.W.2d 20, 29-30 (Mich. 2018). "Rescission abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made." *Bazzi*, 919 N.W.2d at 29. "Rescission, whether legal or equitable, is governed by the equitable principles, one of which is that an essential prerequisite to the receipt of such relief is the return of what has been received, or its

9

equivalent, by him who seeks the remedy." *Kundel v. Portz*, 3 N.W.2d 61 (1942). Rescission is limited to the contracting parties. *Wilmore-Moody v. Zakir*, 999 N.W.2d 1, 6 (Mich. 2023) ("Rescission is, stated simply, a 'legal fiction' meant to restore the *contracting parties* to the status quo.") (Emphasis added).

This creates a problem for 5 Guys because it has not pointed to any contract with Redbud or Leonowicz to rescind, and this is evident from the Response's conspicuously vague statement about which documents Leonowicz allegedly signed. (ECF No. 128, PageID.5295–5296). The vagueness is intentional. Leonowicz is not a party to any of the contracts at issue. Nor was Redbud.

Furthermore, because rescission is an equitable remedy, it is subject to two strictures found in equity. One is the maxim that he who seeks equity must do equity. *National Transformer Corp v. France Mfg. Co.*, 215 F.2d 343, 361 (6th Cir. 1954) (stating maxim does not apply to those seeking purely defensive relief). And the other is the doctrine of unclean hands.[1] *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 797 (6th Cir. 2009) ("Rescission is an equitable remedy, and equitable claims are subject to the defense of unclean hands."). Under Michigan law, "one who seeks the aid of equity must come in with clean hands." *Stachnik v. Winkel*, 230 N.W.2d 529, 532 (Mich. 1975). The Michigan Supreme Court explained the unclean hands doctrine in *Rose v. National Auction Group, Inc.*, 646 N.W.2d 455, 461 (Mich. 2002) (quoting *Stachnik*, 230 N.W.2d at 532) as:

> [A] self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he

---

[1] Redbud and Leonowicz also raised unclean hands as affirmative defenses. (ECF No. 24, ¶ 2, PageID.325-326).

seeks relief, *however improper may have been the behavior of the defendant.* [(Cleaned up).]

Established equitable principles create problems for the Court awarding rescission to 5 Guys.

First, 5 Guys has unclean hands. Not only did they receive funds in connection with the Muskegon Dispensary's operations, which is itself a violation of the CSA, but also acquired an equity interest in a cannabis business. 21 U.S.C. §§ 841, 846, 854. This precludes equitable relief. *Wuliger*, 567 F.3d at 797; *Rose*, 646 N.W.2d at 461; *Bart Street III v. ACC Enters., LLC*, 2020 WL 1638329, at *8-9 (D. Nev. Mar. 31, 2020) ("The Court may not provide Plaintiff an equitable remedy that would allow Plaintiff to circumvent federal criminal law in order to recover the proceeds of its crime."); *Kornea*, 797 F. Supp. 3d at 305.

Second, 5 Guys does *not actually seek rescission.* Instead, it seeks selective unwinding. Again, rescission restores the parties to the status quo. *Bazzi*, 919 N.W.2d at 29–30. Applied to this case, the Court would need to order that 5 Guys return to Redbud Roots the $397,000 it extracted as distributions and from the sale of the cannabis business, then it would need to order 5 Guys to transfer its equity interest in GLH Muskegon back to a cannabis entity— Redbud Roots. The transfer of an equity interest in a cannabis company is itself a CSA violation. The Court cannot order the parties to commit a federal crime as the cost of "equity."

Third, 5 Guys' fraud theory collapses upon itself. To get rescission, 5 Guys must prove fraud as a predicate. The "fraud" 5 Guys pleads is that Redbud and Leonowicz did not follow through on a contract to violate the CSA. It argues, among other things, that fraud exists because: (1) the $1,500,000 was not deployed to fund cannabis operations and purchase bulk flower at GLH Muskegon (ECF No. 84, PageID.1614-1615; ECF No. 85-1, PageID.1975-1976; ECF No. 85-4, PageID.2144); (2) that Leonowicz and Fanta allegedly siphoned

11

cannabis profits via additional fees and that it was represented that 5 Guys would be treated equally in terms of distributions (ECF No. 98, PageID.3511-3515); and (3) that Lab VIII never transferred its cannabis license to GLH Muskegon. (ECF No. 98, PageID.3495-3496). Each "fraud" is a complaint from 5 Guys that Redbud and Leonowicz did not violate 21 U.S.C. §§ 841, 843, 846, and 854 as they agreed to do. The Court should not treat that as actionable fraud.  Doing so would turn the fraud remedy into a private right of action to enforce a CSA-violating bargain.

The fourth and the final problem is one of public policy. *Sensoria*'s rescission and fund origination logic is fundamentally flawed because it would theoretically allow a well-established and long-time cannabis investor to claim fraud and seek rescission notwithstanding how long the investment existed. Under *Sensoria*'s reasoning, and taken to the level 5 Guys requests, a cannabis investor could invest in and receive profits from a cannabis company for an innumerable number of years. The investor would receive profits from the operation, and at all times be complicit in the very acts prohibited by federal law. Should the illegal venture eventually "go under," the investor could theoretically claim fraud and then sue to recover the original investment based on the idea that the investor extricating from the illegal enterprise "furthers the CSA's goals." *Sensoria*, 581 F.Supp.3d at 1262. But this ignores that the parties were equally involved in the same illegal enterprise but provides only one of the parties with relief. That is the exact scenario the equitable maxims described above are meant to avoid and why "[w]hen parties make illegal contracts, 'the law will leave them as it finds them.'" *McMullen*, 174 U.S. at 670; *Cook v. Wolverine Stockyards Co.*, 73 N.W.2d 902, 904 (Mich. 1955) ("The trial court held that an illegal contract, against public policy, had been pleaded and that under such circumstances courts will not

12

enforce it or grant relief thereunder but leave the parties where they have placed themselves.").

## V.    IT WILL NOT BE AN UNJUST RESULT TO FOR THE COURT TO LEAVE 5 GUYS AS IT FOUND THEM.

Throughout 5 Guys' Response it makes references to windfalls and unjust forfeitures, and concludes by stating: "This Court should not embrace the grossly inequitable result of granting an enormous windfall to the fraudsters in this case." (ECF No. 128, PageID.5297). But what 5 Guys continues to overlook and ignore entirely is that Leonowicz *never received the money at issue*. The well-documented and laid out report of McGuire explains where the $1,500,000 went. (ECF No. 82-3, PageID.1375-1376, 1380, 1385-1388). And none of it went to Leonowicz's pocket. There is no unjust windfall. Nor would it be equitable to require Leonowicz to underwrite 5 Guys' bet on Muskegon when he did not receive or control the funds. Furthermore, the idea of an unjust windfall and rectifying that result is undermined by the fact that 5 Guys did *not* assert an unjust enrichment claim. (ECF No. 1, PageID.22, 24, 26, 28, 29, 30, 32, 33, 34, 36, 37, 38). Had there actually been an unjust enrichment, 5 Guys would have claimed it as part of the Complaint. Its attempt to rebrand its claim as one for unjust enrichment now is too little too late.

## VI.    THE CSA ILLEGALITY DEFENSE CANNOT BE WAIVED.

5 Guys opens with a waiver argument. (ECF No. 128, PageID.5281–5282). It fails. The illegality of a contract "is an issue that the court can raise sua sponte, and cannot be waived by the parties." *Kornea*, 797 F. Supp. 3d at 300 (quoting *Hurd v. Hodge*, 334 U.S. 24, 34–35 (1948)). Here, this Court itself raised the CSA illegality issue sua sponte in its Supplemental Order. (ECF No. 123, PageID.5204). And 5 Guys concedes that fact in the very paragraph

13

asserting waiver. (ECF No. 128, PageID.5282). A defense the Court has independently identified is not waivable. 5 Guys' own authority confirms it. (ECF No. 128, PageID.5283) (quoting Rendleman, *Illegal Contracts and Agreements*, 81 Wash. & Lee L. Rev. 711, 730 (2024)). 5 Guys' argument is in correct legally and factually.

**VII.    THE FORUM-SELECTION CLAUSE IS NOT A WAIVER OF CSA ILLEGALITY, AND THE PPM GAVE 5 GUYS A STATE-COURT OPTION IT DECLINED.**

Section G of 5 Guys' Response argues that the forum-selection clause in Section 7.4 of the Shareholders Agreement waives the CSA illegality defense. (ECF No. 86-4, PageID.2418). This argument fails for two reasons. First, a party cannot contract around a federal court's refusal to lend its process to the enforcement of illegal undertakings. A forum-selection clause simply waives objections to *personal jurisdiction and venue.* Second, the forum selection clause at issue does not support 5 Guy's argument.  Instead, it expressly preserved 5 Guys' option to sue in the *state courts* of Michigan. (ECF No. 86-4, PageID.2418, ¶ 7.4). This is a non-sequitur.

**VIII.    THERE IS NO CONCEIVABLE REMEDY WHERE 5 GUYS CAN RECOVER FROM REDBUD FOR NON-CANNABIS RELATED ASSETS.**

The only section of 5 Guys' Response that even conceivably touches or concerns Redbud is Section H. (ECF No. 128, PageID.5296). It does not address any of the arguments in Redbud's Supplemental Brief at all. As a result, 5 Guys has therefore abandoned its claims against Redbud. *Brown v. VHS of Michigan, Inc.*, 545 Fed. Appx. 368, 372 (6th Cir. 2013). Furthermore, even if the Court were to consider the fund origination argument from *Sensoria*, it still is irrelevant. Redbud is a cannabis company. All of its assets are related to cannabis, and 5 Guys has not produced evidence to contradict that fact. There is nothing the Court could do that would not require a judgment to be paid by cannabis proceeds.

## CONCLUSION

For the foregoing reasons, Redbud and Leonowicz respectfully request the Court grant summary judgment in their favor and dismiss all of 5 Guys' claims against them with prejudice.

Respectfully submitted,

FOSTER, SWIFT, COLLINS & SMITH, P.C.
Attorneys for Defendants Leonowicz,
Redbud Roots, and Redbud Roots Lab VIII

Dated: May 19, 2026          By:      /s/ Brandon M. H. Schumacher
                                       Brandon M. H. Schumacher (P82930)
                                       313 S. Washington Square
                                       Lansing, MI  48933
                                       (517) 371-8255
                                       bschumacher@fosterswift.com

HOWARD & HOWARD, PLLC
Co-Counsel for Defendant Alex Leonowicz

Dated: May 19, 2026          By:      /s/ Miles T. Macik
                                       Miles T. Macik (P63262)
                                       460 W. 4th Street
                                       Royal Oak, MI 48067
                                       (248) 723-0474
                                       mtm@h2law.com

15

## <u>CERTIFICATE OF WORD COUNT</u>

Brandon M. H. Schumacher certifies that the Joint Reply in Support of Supplemental

Brief Regarding Federal Illegality consisting of 4,210 words (exclusive of cover sheets, tables

of contents/authorities, and exhibits) was generated in Microsoft Word.

Respectfully submitted,
FOSTER, SWIFT, COLLINS & SMITH, P.C.
Attorneys for Leonowicz,
Redbud Roots, and Redbud Roots Lab VIII

Dated: May 19, 2026          By:      /s/ Brandon M. H. Schumacher
Brandon M. H. Schumacher (P82930)
313 S. Washington Square
Lansing, MI  48933
(517) 371-8255
bschumacher@fosterswift.com

37718:00003:202703735-1

16